**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**MARTA BUENO,**

**Plaintiff,**

**21-cv-535 (JGK)**

**- against -**

**EUROSTARS HOTEL COMPANY, S.L., FRONT PROPERTY HOTEL CORPORATION, AMANCIO LÓPEZ SEIJAS, and CRISTINA MARROQUÍ,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Marta Bueno, brought this action against Eurostars Hotel Company S.L. ("EHC"), Front Property Hotel Corporation ("Front"), Amancio López Seijas ("Mr. López"), and Cristina Marroquí ("Ms. Marroquí"), alleging age and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq. ("NYCHRL").

EHC, Mr. López, and Ms. Marroquí move to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). ECF No. 23. Front joins in the motion seeking partial dismissal of the plaintiff's claims for age discrimination pursuant to Federal Rule of Civil Procedure

12(b)(6). Id. For the reasons that follow, the motion to dismiss is **granted in part** and **denied in part**.

**I.**

The following facts are taken from the plaintiff's amended complaint and the documents referenced therein and are accepted as true for purposes of this motion.

The plaintiff, Marta Bueno, is a 43-year-old woman who resides in New York, New York. Am. Compl. ¶¶ 10-11, ECF No. 15. The corporate defendants, EHC and Front, are hotel companies. Id. ¶¶ 13, 18. The plaintiff alleges that EHC operates two hotels in New York City and employs 22 people there, and that Front co-operates one of these New York hotels with EHC. Id. ¶¶ 13-14, 18. The co-operated hotel is located at 129 Front Street (the "Front Street Hotel"). Id. ¶ 18. The individual defendants, Mr. López and Ms. Marroquí, are employees of both companies and reside in Spain. Id. ¶¶ 21, 23, 26, 28. Mr. López is the owner and Chief Executive Officer ("CEO") of EHC and Front, id. ¶ 21, and Ms. Marroquí is the International Sales Manager of both companies, id. ¶ 26. At all relevant times, Mr. López is alleged to have "closely surveilled" the businesses of EHC and Front, and "closely controlled all aspects related to employee management," including hiring and firing. Id. ¶ 52; see also id. ¶¶ 53-63. The plaintiff also alleges that both Mr. López and Ms.

Marroquí traveled to New York approximately four times per year as part of their employment with EHC and Front. Id. ¶¶ 23, 28.

The plaintiff alleges that she was jointly employed by EHC and Front between October 2007 and February 25, 2020. Id. ¶¶ 15, 20. When the plaintiff was initially hired, she was employed at the corporate defendants' hotel in Barcelona, Spain, where she worked for approximately six years. Id. ¶¶ 37-40. In 2013, "due to [the plaintiff's] outstanding performance," Mr. López promoted her to serve as the Chief Operating Officer ("COO") of the Front Street Hotel in New York City, where she was transferred. Id. ¶ 40. At the time of this promotion, the plaintiff was 35 years old, single, and had no children. Id. ¶ 45. The plaintiff claims that her "status as a young single woman with no children fit into [Mr. López's] preference of hiring individuals under the age of 40, and if women, preferably with no children." Id. ¶ 46.

In 2015, the plaintiff's duties were expanded to include management of EHC's other hotel in New York City. Id. ¶ 47. Around this time, the plaintiff received a new employment agreement that provided for paid maternity leave for four months. Id. ¶¶ 48-49. This employment agreement listed EHC's previous corporate name, Agincort 2008 S.L.U, as the corporate employer. Id. ¶ 48.

On or about February 1, 2018, Ms. Marroquí became the plaintiff's supervisor. Id. ¶ 64. The plaintiff alleges that she and Ms. Marroquí soon became friends, id. ¶ 68, and that Ms. Marroquí confided in her that she "hated" her friends when they became pregnant, id. ¶ 69.

In December 2019, the plaintiff informed Ms. Marroquí of her desire to use in vitro fertilization ("IVF") to have a child. Id. ¶ 74. The plaintiff claims that she told Ms. Marroquí that IVF was her "only option" to become pregnant because she was 41 years old at the time. Id. Ms. Marroquí allegedly responded, "[T]hat's nice, but . . . Mr. López doesn't like people taking leave because it ends up being a cost for the company." Id. ¶ 75. Nonetheless, on January 3, 2020, the plaintiff told Ms. Marroquí that she would begin IVF treatments later that month. Id. ¶ 76. Ms. Marroquí was allegedly annoyed, id. ¶ 77, and told Mr. López of the plaintiff's plans to become pregnant, id. ¶ 78.

On January 30, 2020, the plaintiff began IVF treatments, id. ¶ 79, and on February 20, 2020, she received confirmation that her IVF procedure had been successful and that she was pregnant, id. ¶ 80. On February 20, the plaintiff shared this news with Ms. Marroquí, who was "clearly taken aback." Id. ¶¶ 81-83. The plaintiff claims that Ms. Marroquí told Mr. López about the plaintiff's pregnancy. Id. ¶ 85.

On February 25, 2020, five days after sharing the news of her pregnancy with Ms. Marroquí, the plaintiff received a letter that her employment with EHC and Front had been terminated. Id. ¶¶ 86-87. The letter was signed by "Front Property Hotel Corporation" on a letterhead bearing the name "Eurostars." Id. at ¶ 87; ECF No. 34-10. The letter "provided no basis" for the plaintiff's termination, and the plaintiff received no oral explanation for it. Am. Compl. ¶¶ 87-88. The plaintiff claims that she never received any warnings or bad reviews during her 13-year employment with EHC and Front, and, to the contrary, that her record was "impeccable." Id. ¶¶ 96-97.

On or about April 1, 2020, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging gender and pregnancy discrimination against EHC and Front. Id. ¶ 33. On or about September 25, 2020, she received a right-to-sue letter in connection with this charge. Id. ¶ 34. On January 21, 2021, the plaintiff filed a complaint in this Court, ECF No. 1, which she amended on May 7, 2021, ECF No. 15.

**II.**

**A.**

EHC, Mr. López, and Ms. Marroquí move to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The plaintiff bears the burden of proving the Court's subject matter

jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).[1] In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are disputed, the Court has "the power and the obligation to consider matters outside the pleadings," such as affidavits and documents, to determine whether subject matter jurisdiction exists. See Parks v. Off. of Temp. & Disability Assistance, 675 F. Supp. 2d 440, 441 (S.D.N.Y. 2009) (collecting cases). In so doing, the Court "may not rely on conclusory or hearsay statements contained in the affidavits," Attica, 386 F.3d at 110, but is instead guided by that body of law that has developed under Federal Rule of Civil Procedure 56, Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); see, e.g., Parks, 675 F. Supp. 2d at 441.

**B.**

In this case, the Court has subject matter jurisdiction over the plaintiff's claims on the basis of federal question jurisdiction and supplemental jurisdiction. The plaintiff

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

appears to concede that diversity jurisdiction is lacking in this case.

Pursuant to 28 U.S.C. § 1331, district courts have subject matter jurisdiction over "all civil actions arising under the United States Constitution and the laws and treaties of the United States." This "federal question" jurisdiction is properly invoked when federal causes of actions are "colorably" pleaded in the plaintiff's complaint. See Goldman v. Sol Goldman Invs., LLC, No. 20-cv-06727, 2021 WL 4198253, at *2 (S.D.N.Y. Sept. 14, 2021). Once a basis for federal question jurisdiction is satisfied, the Court may elect to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This includes "nonfederal claim[s] between parties litigating other matters properly before the court," or the addition of independent parties, when the claims against those parties arise "out of the same common nucleus of operative facts as the claims against the other named parties." Schinella v. Soyer, No. 19-cv-8931, 2021 WL 4255055, at *4 (S.D.N.Y. Sept. 16, 2021); accord Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). Unless one of the restrictions provided in § 1367(c) applies, this exercise of supplemental jurisdiction "is

a favored and normal course of action." Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991).

The Court here has federal question jurisdiction over the plaintiff's claims that the corporate defendants violated Title VII, because claims under Title VII necessarily require the application of federal law. See Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850 (2019).[2] And, because the plaintiff's Title VII claims against EHC and Front are factually intertwined with her nonfederal claims against them and the individual defendants, the Court has supplemental jurisdiction over these additional claims. See Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (recognizing that the common nucleus concept encompasses claims that arise "out of approximately the same set of events" as the jurisdiction-invoking claim); Schinella, 2021 WL 4255055, at *4. Finding no reason to deny the exercise of jurisdiction on the basis of § 1367(c), the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **denied**.

## III.

### A.

EHC, Mr. López, and Ms. Marroquí also move to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure

[2] The plaintiff explicitly abandoned her Title VII claims against the individual defendants in her opposition brief. The motion to dismiss is therefore **granted** as to those claims.

12(b)(2) for lack of personal jurisdiction. When a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, the burden is on the plaintiff to "make a prima facie showing of personal jurisdiction over the defendant." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008). "[A] prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013). But conclusory statements or legal conclusions "couched" as factual allegations will not do. Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998).

**B.**

In this case, the Court has personal jurisdiction over EHC and Mr. López, but not over Ms. Marroquí. Determining personal jurisdiction over the defendants involves a two-step inquiry. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013). First, the Court looks to the law of the forum state to determine whether personal jurisdiction lies. Id. To support this Court's exercise of personal jurisdiction

over the moving defendants, the plaintiff relies on N.Y. CPLR § 302(a)(1), which provides that personal jurisdiction lies over any non-domiciliary who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state," where the cause of action arises from that connection. Under § 302(a)(1), "jurisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Fischbarg v. Doucet, 880 N.E.2d 22, 26 (N.Y. 2007). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id.

Second, the Court must determine whether its exercise of jurisdiction over the particular defendant comports with the United States Constitution. Licci, 732 F.3d at 168. The Court must therefore determine (1) "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant," and (2) "whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016).

1.

The Court has personal jurisdiction over EHC. First, the plaintiff has satisfied her burden of showing that EHC engaged in sufficient purposeful conduct in New York and, accordingly, that jurisdiction is proper under New York's long-arm statute. The plaintiff alleges that EHC owns and operates two hotels, including the Front Street Hotel at which the plaintiff was primarily employed, and employs 22 people in New York, including — at one time — the plaintiff. She supports this claim with a sworn declaration attesting to EHC's ownership of hotels in New York and to her continued employment by them until her termination. See ECF No. 33. She also submits, among other things, her transfer letter to the Front Street Hotel in New York from October 2017 that bears the "Eurostars" name on the top, ECF No. 34-14, and her termination letter, ending the plaintiff's employment in New York that is written on "Eurostars" letterhead, ECF No. 34-10. This is sufficient to demonstrate that EHC purposefully conducted activities in New York within the meaning of § 302(a)(1). Moreover, because the plaintiff alleges that she was discriminated against while employed at one of EHC's New York hotels, and that EHC was in fact the entity that terminated her, there is plainly a nexus between the business transacted by EHC in New York — their hotel

business – and the cause of action – the plaintiff's claim for unlawful termination from that hotel business.

While the defendant disputes that EHC operates hotels and employs people in New York, and that EHC is the "Eurostars group of hotels" whose name appears on the plaintiff's transfer and termination letters, Defs.' Reply Mem. 1-2, ECF No. 41, these claims are insufficient to rebut the plaintiff's evidence at this stage. Both the plaintiff and the defendant swear to their respective positions in declarations submitted to the Court, but only the plaintiff supports her allegations with evidence. And, in any event, the Court must construe disputed facts in the plaintiff's favor. Accordingly, the plaintiff has made a prima facie showing of jurisdiction under § 302(a)(1), see Dorchester, 722 F.3d at 86, and jurisdiction over EHC is proper under New York law.[3]

Second, jurisdiction over EHC comports with constitutional due process. The requisite minimum contacts analysis "overlaps significantly" with New York's § 302(a)(1) inquiry into whether a defendant transacted business in the State, Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016), which, for the reasons given above, is met in this case. The Court's assertion

[3] For the reasons explained below, the Court could also assert personal jurisdiction over EHC based on a joint employer theory on the basis of Front's admitted contacts in New York. See, e.g., Xiaoyan Liu v. Canteen 82 Inc., No. 17-cv-7862, 2018 WL 6067228, at *4-6 (S.D.N.Y. Nov. 20, 2018).

of personal jurisdiction is also reasonable. See id. (listing factors relevant to this inquiry). The defendant has pointed to no burden of litigating this case in New York, and New York State and the plaintiff both have an interest in adjudicating the case in New York. On balance, the assertion of personal jurisdiction over EHC comports with due process. See Licci, 732 F.3d at 170 (noting that it is "rare" and "unusual" for jurisdiction to be proper under N.Y. CPLR § 302(a)(1) but to violate due process). EHC's motion to dismiss for lack of personal jurisdiction is therefore **denied.**

**2.**

Additionally, the Court has personal jurisdiction over Mr. López, but not over Ms. Marroquí. N.Y. CPLR § 302(a)(1) also confers personal jurisdiction over individual corporate officers who "supervise and control an infringing activity." See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010); accord Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44-48 (N.Y. 1988). One way that a plaintiff can make this showing is by alleging that the officer had such "extensive control" over the day-to-day activities of the corporation that the corporation's contacts in New York can be imputed to that defendant. See EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 98 (2d Cir. 2016).

In this case, and at this stage, the plaintiff's allegations regarding Mr. López are sufficient to establish personal jurisdiction over him under New York's long-arm statute and the United States Constitution. The plaintiff alleges, among other things, that Mr. López is the owner and CEO of EHC and Front and that, in this role, he "closely surveilled every aspect of each of [EHC and Front's] business," "micromanage[d]" his employees, and subjected all employment-related matters of his hotels to "close oversight." Am. Compl. ¶¶ 52-53, 59, 62. These allegations include close oversight over the properties owned by EHC and Front in New York and of their New York employees. The plaintiff also claims that Mr. López is the only person with authority to terminate managers, including the plaintiff, whose job in New York was terminated. Crediting the plaintiff's allegations, the plaintiff meets her burden of establishing personal jurisdiction over Mr. López through his close control of his companies' operations in New York. See EMI, 844 F.3d at 98; Belabbas v. Inova Software Inc., No. 16-cv-7379, 2017 WL 3669512, at *3 (S.D.N.Y. Aug. 24, 2017). And because the plaintiff's claim that she was discriminatorily terminated from her employment with Mr. López's companies arises directly from Mr. López's businesses transacting business in New York, personal jurisdiction under CPLR § 302(a)(1) is proper. See id.

The exercise of personal jurisdiction over Mr. López is also consistent with constitutional due process. First, for the reasons given above, the plaintiff has alleged sufficient facts to make out a prima facie case that Mr. López purposefully availed himself of the privilege of doing business in New York, and that this case arises out of those alleged contacts. See EMI, 844 F.3d at 98. Second, the Court's exercise of personal jurisdiction is not unreasonable; the defendant has failed to present a compelling case to the contrary. See Licci, 732 F.3d at 173. The plaintiff has therefore met her burden of establishing personal jurisdiction over Mr. López under both New York law and the United States Constitution, and Mr. López's motion to dismiss on this basis is **denied**.

However, the Court lacks personal jurisdiction over Ms. Marroquí. The plaintiff alleges that Ms. Marroquí, the International Sales Manager of EHC and Front, was her direct supervisor between February 2018 and February 2020. As her supervisor, Ms. Marroquí allegedly controlled the terms and conditions of the plaintiff's employment, and the two were allegedly in regular contact during the plaintiff's employment. But the plaintiff's allegations do not support the claim that Ms. Marroquí exerted sufficient control over EHC or Front such that the corporations' contacts in New York can be imputed to her. See Trisvan v. Heyman, 305 F. Supp. 3d 381, 394-95

(E.D.N.Y. 2018). Nor are Ms. Marroquí's other alleged contacts with New York — such as her travels to New York approximately four times per year for work-related matters — sufficient to establish minimum contacts under either New York's long-arm statute or the United States Constitution. Absent such minimum contacts, personal jurisdiction over Ms. Marroquí is improper. Ms. Marroquí's motion to dismiss for lack of personal jurisdiction is therefore **granted**.

**IV.**

**A.**

The defendants also move to dismiss on the basis of Federal Rule of Procedure 12(b)(6) for failure to state a claim. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**B.**

The plaintiff's amended complaint raises the following claims against the defendants: (1) direct pregnancy discrimination in violation of the NYSHRL and the NYCHRL, and, in the case of EHC and Front, Title VII; (2) aiding and abetting pregnancy discrimination in violation of the NYSHRL and the NCYHRL; (3) direct age discrimination in violation of the NYSHRL and the NYCHRL; and (4) aiding and abetting age discrimination in violation of the NYSHRL and the NCYHRL. EHC and Mr. López move to dismiss all of the claims against them. Front only moves to dismiss the plaintiff's age discrimination claims.

The defendants make several arguments, which the Court considers in turn: (1) that EHC and Mr. Lopez were not the

plaintiff's "employer" under the NYSHRL, NYCHRL or, in the case of EHC, Title VII; (2) that the plaintiff has not alleged facts amounting to pregnancy discrimination; and (3) that the plaintiff has not alleged facts amounting to age discrimination.

**1. Employment Relationships**

**a. EHC**

First, construing the facts in the plaintiff's favor, the amended complaint plausibly alleges that EHC is subject to liability as the plaintiff's "employer" under Title VII, the NYSHRL, and the NYCHRL.

For a corporate defendant to be liable for alleged discrimination under Title VII, the NYSHRL, and the NYCHRL, the defendant must qualify as the plaintiff's "employer." See Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020). To determine whether a corporate defendant is a direct employer under these statutes, the individual must, at the very least, receive renumeration from the defendant. O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997). But a corporate defendant need not be a plaintiff's direct employer to be liable under these statutes. Farmer, 473 F. Supp. 3d at 322-23. "Under the joint employer doctrine, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability

for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." Id. at 322 (quoting Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)). "Factors courts have used to examine whether an entity constitutes a joint employer of an individual include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Farmer, 473 F. Supp. at 323. An "essential element" of such a finding is "sufficient evidence of immediate control over the employees." Id. at 322-32 (citing Serv. Emps. Int'l Union, Local 32BJ v. NLRB, 647 F.3d 435, 442 (2d Cir. 2011)).

In this case, the plaintiff alleges that EHC was her direct employer. However, the plaintiff does not sufficiently allege that she received renumeration from EHC – for example, by pleading facts relating to her salary in the amended complaint or providing copies of her pay checks with her complaint – and liability on this ground is therefore precluded.

However, the plaintiff has adequately pleaded facts demonstrating that EHC and Front operated as her joint employers, and EHC may therefore be liable under Title VII, the NYSHRL, and the NYCHRL. The defendants concede that Front was the plaintiff's employer. The plaintiff's allegations in her amended complaint, as well as in the documents referenced in the amended complaint, suffice to establish that, between Front and

EHC, there is commonality of hiring, firing, pay, and supervision, and that both exercise immediate control over employees. In particular, the plaintiff claims that she was hired by Mr. López, the owner and CEO of both EHC and Front, and that she had duties at both EHC and Front hotels in New York. She alleges that the terms of her employment — including her benefits, such as maternity benefits — were controlled by EHC, whose contract with her governed at the time of her termination. Additionally, the plaintiff alleges that she was terminated by a letter written on "Eurostars" letterhead and signed by a representative of Front. Viewing the facts in the light most favorable to the plaintiff, the plaintiff's allegations are sufficient at this stage to establish that EHC and Front operated as her joint employers, and that EHC is therefore subject to liability under Title VII, the NYSHRL, and the NYCHRL.

**b. Mr. López**

Mr. López is also subject to liability under the NYCHRL and the NYSHRL, although not as the plaintiff's "employer." Under a recent decision by the New York Court of Appeals, a corporate employee — even its owner and CEO — no longer qualifies as an "employer" under these statutes. Doe v. Bloomberg, L.P., 167 N.E.3d 454, 459-61 (N.Y. 2021). However, Mr. López is not thereby immune from liability: both the NYCHRL and the NYSHRL

provide alternative bases for individual liability that may be applicable here. Indeed, under the NYCHRL, individual employees may incur liability for their own discriminatory conduct, as well as for "aiding and abetting such conduct by others, or for retaliation against protected conduct." Id. at 460. And, under the NYSHRL, individual employees may be liable for aiding and abetting discriminatory conduct. See N.Y. Exec. Law § 296(6); see also Bonaffini v. City Univ. of N.Y., No. 20-cv-5118, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021).

Because EHC and Mr. López can be subject to liability under the relevant statutes, it is necessary to determine whether the plaintiff has stated a claim under the relevant statutes.

**2. Pregnancy Discrimination**

The plaintiff first alleges that Front, EHC, and Mr. López discriminated against her on the basis of her pregnancy status in violation of the NYSHRL and the NYCHRL, and as to EHC and Front only, in violation of Title VII. EHC and Mr. López move to dismiss these claims for failure to state a claim.

**a. Title VII Claim[4]**

The amended complaint states a claim against EHC for pregnancy discrimination under Title VII. Title VII makes it

---

4 The plaintiff abandoned her Title VII claim against Mr. López in her opposition brief. In any event, because Title VII does not provide for individual liability, this claim would be dismissed. See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam).

unlawful for an employer to discriminate on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII's prohibition against gender discrimination includes a prohibition against pregnancy discrimination. Young v. United Parcel Serv., Inc., 575 U.S. 206, 135 S. Ct. 1338, 1353 (2015). "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee . . . [or] the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). However, a plaintiff is not required to plead a prima facie case of discrimination to defeat a motion to dismiss. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015); Orosz v. Regeneron Pharms., Inc., No. 15-cv-8504, 2016 WL 11484449, at *3 (S.D.N.Y. Aug. 30, 2016), report and recommendation adopted, No. 15-cv-8504, 2016 WL 6083993 (S.D.N.Y. Oct. 17, 2016). To survive a motion to dismiss, a plaintiff alleging discrimination need only assert sufficient nonconclusory factual matter to nudge her claims across the line from conceivable to plausible. Vega, 801 F.3d at 84.

In this case, the plaintiff has pleaded facts that provide at least minimal support for the proposition that EHC was motivated by discriminatory intent — namely, pregnancy discrimination — in terminating her, and she has therefore stated a claim under Title VII. See Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). EHC does not appear to dispute that the plaintiff is a member of a protected class, given that she was a pregnant woman at the time of her termination; that she satisfactorily performed the duties required by her position; or that she was discharged. The defendant also does not appear to dispute that the plaintiff's termination occurred in circumstances giving rise to an inference of discrimination — nor could it. The plaintiff was terminated five days after she informed Ms. Marroquí that she was pregnant. The short temporal proximity between the time that the plaintiff disclosed her pregnancy and her termination — only five days — more than suffices to establish an inference of unlawful discrimination. See Lenzi v. Systemax, Inc., 944 F.3d 97, 108 (2d Cir. 2019). Because the plaintiff has pleaded facts that give rise to a plausible inference of discrimination, and facts to support her contention that EHC was her "employer" within the meaning of Title VII, EHC's motion to dismiss the plaintiff's pregnancy discrimination claims under Title VII is **denied**.

**b. Direct NYSHRL and NYCHRL Claims**

The plaintiff has also stated a claim against EHC for pregnancy discrimination under the NYSHRL and the NYCHRL. However, her direct claims against Mr. López survive only under the NYCHRL.

Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL "liberally for the accomplishment of the uniquely broad and remedial purposes thereof." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. Law § 300. Applying this standard, to establish a pregnancy discrimination claim, "the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." See Mihalik, 715 F.3d at 110.

In this case, because the plaintiff has stated a claim against EHC for pregnancy discrimination under the stricter Title VII standard, she has stated a claim under the NYCHRL and the NYSHRL. See Farmer, 473 F. Supp. 3d at 327; Smith v. City of

New York, No. 16-cv-9244, 2018 WL 3392872, at *6 (S.D.N.Y. July 12, 2018). EHC's motion to dismiss the plaintiff's pregnancy discrimination claims under the NYCHRL and the NYSHRL is therefore **denied.**

The plaintiff's direct claim against Mr. López under the NYCHRL also survives. "The NYCHRL provides a broader basis for direct individual liability than the NYSHRL." Xiang v. Eagle Enters., LLC, No. 19-cv-1752, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020). As relevant here, the NYCHRL makes it an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the gender or sexual and reproductive health decisions of an employee, to discharge that employee from employment. N.Y.C. Admin. Code § 8-107(1)(a).

In this case, the plaintiff alleges that Mr. López was the central decisionmaker in her termination. She claims that, as the CEO of both EHC and Front, he exerted significant control over both entities' labor relations and, in particular, the terms and conditions of the plaintiff's employment. While Mr. López did not sign his name on her termination letter or terminate her himself, the facts pleaded in the plaintiff's complaint allow the reasonable inference that Mr. López was a decisionmaker in her termination, and therefore that Mr. López is liable under the NYCHRL for "participat[ing] in the conduct giving rise to the discrimination claim." See Xiang, 2020 WL

248941, at *6. Mr. López's motion to dismiss the plaintiff's direct claim under the NYCHRL is therefore **denied.**

However, because the NYSHRL includes no similar provision for direct employee liability, Mr. López's motion to dismiss the plaintiff's direct claim under the NYSHRL is **granted.**

**c. Aiding-and-Abetting Claims**

The plaintiff's aiding-and-abetting claims state a claim against Mr. López, but not against EHC.

Both the NYSHRL and the NYCHRL make it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [or chapter], or attempt to do so." See N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). Under this framework, "a co-worker who actually participates in the conduct giving rise to a discrimination claim can be held individually liable as an aider and abettor." Bonaffini, 2021 WL 2895688, at *2. "This extends to personal liability for aiding and abetting allegedly unlawful discrimination by an employer even where an individual defendant's actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL." Farmer, 473 F. Supp. 3d at 337.

For the same reasons that the plaintiff has plausibly alleged that Mr. López is directly liable under the NYCHRL, she

has plausibly alleged that he is liable as an aider-and-abettor of EHC's conduct under the NYSHRL and the NYCHRL. See Xiang, 2020 WL 248941, at *7. The plaintiff has pleaded facts sufficient to raise an inference that Mr. López actually participated in the plaintiff's termination: he was allegedly the main decisionmaker in her termination. This is "the kind of direct, purposeful participation that aiding and abetting liability requires." See Bonaffini, 2021 WL 2895688, at *3; see also Farmer, 473 F. Supp. 3d at 337-38. Accordingly, Mr. López's motion to dismiss the plaintiff's aiding-and-abetting claims under the NYSHRL and the NYCHRL is **denied.**

However, the plaintiff's aiding-and-abetting claims against EHC must be dismissed. There can be no aider-and-abettor liability as to a corporate defendant for aiding and abetting its own conduct, nor can it be liable for aiding the individual defendants to aid its own conduct. Xiang, 2020 WL 248941, at *11. EHC's motion to dismiss the plaintiff's aiding-and-abetting claims under both the NYSHRL and the NYCHRL is therefore **granted.**

**3. Age Discrimination**

The plaintiff also alleges that the defendants discriminated against her on the basis of her age in violation of the NYSHRL and the NYCHRL. As with her pregnancy discrimination claims, the plaintiff brings both direct and

aiding-and-abetting claims against the defendants under the NYSHRL and the NYCHRL. All of the defendants challenge the sufficiency of the plaintiff's claims against them.

**a. NYSHRL and NYCHRL Claims**

The plaintiff fails to state a claim for age discrimination under the NYSHRL and the NYCHRL. Claims for age discrimination under the NYSHRL and the NYCHRL, like pregnancy discrimination claims, must be construed liberally. Chauca v. Abraham, 841 F.3d 86, 87-88 (2d Cir. 2016). Nonetheless, the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive." Mihalik, 715 F.3d at 110. That is, the plaintiff must allege facts permitting an inference that she was treated "less well at least in part because of her [age]." See id.; see also Moore v. Verizon, No. 13-cv-6467, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016).

In this case, the plaintiff's claims against EHC, Front, and Mr. López must be dismissed because, even construing her allegations in the light most favorable to her, the plaintiff has failed to plead any facts that plausibly allege that her termination occurred under circumstances giving rise to even a minimal inference of discrimination. The plaintiff argues that the defendants fired her because she underwent IVF treatment in order to become pregnant, and that because older women are more likely to require IVF procedures, her termination raises an

inference of age discrimination. As the defendants rightly point out, however, "IVF-assisted reproductive technology is not only for 'older mothers.'" Defs.' Reply Mem. 9. But even accepting the plaintiff's argument as true, the purported association of IVF with older women, without more, does not raise the requisite inference that her termination was motivated by age discrimination. Nor has the plaintiff pleaded any facts suggesting that any relevant decisionmaker made ageist criticisms or comments, or that those outside of her protected class were treated differently from her. Also missing from the plaintiff's pleadings is any claim that she was replaced by a younger employee. Absent these sorts of facts supporting her claim, the plaintiff's age discrimination claims under the NYSHRL and the NYCHRL amount to nothing more than a claim that, because the plaintiff was terminated when she was over forty years old, the defendants must have discriminated against her. The plaintiff's age at termination, alone, "is plainly insufficient to give rise to a minimal plausible inference of age discrimination." Wexler v. Allegion (UK) Ltd., No. 16-cv-2252, 2017 WL 946301, at *4 (S.D.N.Y. Mar. 9, 2017).[5]

[5] The plaintiff alleges in her amended complaint that EHC has a pattern or practice of discriminating against older women. However, her opposition brief does not rely on these claims to raise an inference of discrimination and, accordingly, this pattern-or-practice claim, to the extent it was even pleaded, is treated as abandoned. See Malik v. City of New York, 841 F. App'x 281, 284 (2d Cir. 2021).

Accordingly, the defendants' motion to dismiss the plaintiff's claims under the NYSHRL and the NYCHRL for age discrimination is **granted**.

**b. Aiding-and-Abetting Claims**

The plaintiff's aiding-and-abetting claims must also be dismissed. Without a predicate act of employment discrimination under the NYSHRL or the NYCHRL, there can be no aiding-and-abetting claim. See Farmer, 473 F. Supp. 3d at 338; Seitz v. New York, No. 2:18-cv-4149, 2019 WL 4805257, at *22 (E.D.N.Y. Sept. 30, 2019). The defendants' motion to dismiss the plaintiff's aiding-and-abetting claims under the NYSHRL and the NYSHRL is therefore **granted**.

**V.**

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part**. The plaintiff's claims against Ms. Marroquí are dismissed in their entirety. Of the plaintiff's remaining claims against the defendants, **Count I** is dismissed as to Mr. López; **Count II** is dismissed as to Mr. López; **Count III** is dismissed as to all of the defendants; **Count IV** is dismissed as to EHC; **Count V** is dismissed as to all of the defendants; **Count VII** is dismissed as to all of the defendants;

**Count VIII** is dismissed as to EHC; and **Count IX** is dismissed as to all of the defendants.

The Clerk is directed to close Docket No. 23.

**SO ORDERED.**

**Dated:** **New York, New York**
**January 7, 2022**

**John G. Koeltl**
**United States District Judge**