UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTA BUENO,<br><br>*Plaintiff,*<br><br>-against-<br><br>EUROSTARS HOTEL COMPANY, S.L., FRONT PROPERTY HOTEL CORPORATION, and AMANCIO LOPEZ SEIJAS, jointly and severally,<br><br>*Defendants.* | 1:21-cv-00535-MMG-RWL |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(b) AND INDIVIDUAL RULES AND PRACTICES II(B)(9)(ii)**

Plaintiff Marta Bueno ("Plaintiff" or "Bueno") hereby submits the following Statement of Additional Material Facts, pursuant to Local Civil Rule 56.1(b) and this Court's Individual Rules and Practices II(B)(9)(ii). The numbering of paragraphs below begins with paragraph number "62", because Defendants' Rule 56.1 statement ends its numbering with paragraph "61".

**1. Plaintiff's employment with Defendants.**

62. In October 2007, Plaintiff Marta Bueno began working as a Duty Manager in one of Defendants' hotels in Barcelona. (Bueno Dep. [Def. Ex. 137, Doc. 139-55, hereinafter "Bueno Dep."] 54:3-7). Plaintiff was hired by Defendant Amancio Lopez Seijas ("Lopez"). (Plaintiff Decl. ¶ 2).

63. In October 2013, Bueno was transferred to New York City and appointed General Manager for the Eurostars Wall Street Hotel in Manhattan at 129 Front Street. (*Id.* at ¶ 3). Plaintiff's 2013 transfer to New York was a promotion. (Sanjurjo Dep. [Def. Ex. 139, Doc. 139-57, hereinafter "Sanjurjo Dep."], 57:11-22).

1

64. Due to her outstanding performance, Plaintiff was again promoted in 2015 by Lopez to the position of Chief Operating Officer ("COO") of Defendants' New York City hotels, including the hotels at 129 Front Street and 52 East 41st Street. (Plaintiff Decl. ¶ 4).

65. In 2017, Bueno was temporarily relocated to Miami to open two Eurostars hotels. (*Id*. at ¶ 5). Later in 2017, Bueno helped open a Eurostars hotel in Chicago. (*Id*. at ¶ 6).

**2. Plaintiff's close relationship with Supervisor Marroqui.**

66. In 2018, and while still in New York, Bueno was transferred to the position of Sales Manager in Defendants' Commercial Division, supervised by Cristina Marroqui. (Marroqui Dep. [Def. Ex. 140, Doc. 139-58, hereinafter "Marroqui Dep."], 18:5-7; 18:12:24-13:12; 19:11-15; Sanjurjo Dep., 60:23-61:4; Bueno Dep., 33:20-22; 61:19-62:5).

67. Marroqui and Plaintiff became close friends, as they (a) socialized outside of work (Marroqui Dep., 25:12-18, 27:11-21); (b) often discussed personal matters (Marroqui Dep., 28:23-29:6); (c) had nicknames for each other (Marroqui Dep., 41:22-23; 48:22-49:8; Pl. Ex. 4A [Doc. 139-61] at EU-553); (d) Marroqui borrowed clothing from Plaintiff (Marroqui Dep., 42:20-25; Pl. Ex. 4A [Doc. 139-61] at EU-553); (e) they called each other "my darling" (Marroqui Dep., 51:2-6; 52:6-8; 53:17-20, Pl. Ex. 4A [Doc. 139-61] at EU-552); and (f) Bueno concluded a WhatsApp communication to Marroqui with the word "kisses." (Marroqui Dep., 61:12-15 (Marroqui's translation); *cf.* Pl. Ex. 4A [Doc. 139-61] at EU-559 (Defendants' certified translation: "warm regards").

68. On a 2018 trip to Boston, Marroqui texted Plaintiff: "I can't wait to see youuu." (Pl. Ex. 4A [Doc. 139-61] at EU-551; Marroqui Dep., 35:20-24). While in Boston together, they socialized and had lunch together at every opportunity. (Marroqui Dep., 40:19-41:7).

69. In 2018, Bueno suffered the loss of a pregnancy due to an ectopic pregnancy.

(Bueno Dep., 32:13-16). Bueno confided in Marroqui about this event (Marroqui Dep., 30:3-7; 132:5-8), and Marroqui told Plaintiff that she could count on Marroqui if she needed to talk, or if she had pregnancy-related issues that "could affect her work." (Marroqui Dep., 56:18–58:16, 60:20-25).

**3. Plaintiff's leave request and subsequent trip to Barcelona and IVF treatments.**

70. In September 2019, Bueno told Marroqui that she wanted IVF treatments because she was having difficulties getting pregnant naturally. (Bueno Dep., 229:11-16; Bueno Decl. ¶ 7). Bueno said it was cheaper to receive IVF treatments in Barcelona. (Bueno Decl. ¶ 8). When Plaintiff and Marroqui returned to this discussion in December 2019 (Bueno Dep., 223:14-224:7; 228:5-230:10), Marroqui stated, in sum and substance, "that's nice, but, you know this company . . . Lopez doesn't like people taking leave because it ends up being a cost for the company. He wants employees to work no matter what." (Bueno Decl. ¶ 9).

71. On December 26, 2019, while on Christmas vacation in Barcelona, Plaintiff emailed a leave request to Marroqui, advising she had to return to Barcelona around January 21, 2020 until February 1, 2020 or soon thereafter to manage a tenant matter. (Pl. Ex. 11A, attached to the Declaration of Maria Chickedantz. Esq. ["Chickedantz Decl."] ¶ 3, at EU-1066).

72. On January 3, 2020, Bueno told Marroqui that her IVF treatment in Barcelona would commence later that month, to coincide with the trip relating to her tenant vacating the apartment. (Bueno Decl. ¶ 10). During this conversation, Marroqui acted annoyed with Bueno over her plans to become pregnant and eventually take maternity leave. (Bueno Decl. ¶ 11).

73. On January 4, 2020, Marroqui responded by email, asking Bueno, "How many unused vacation days do you have from 2019??" (Pl. Ex. 11A, Chickedantz Decl. ¶ 3, at EU-1066). Bueno said she had 13 days of accrued unused vacation. *(Id.)* Ten days later, Marroqui

3

emailed Plaintiff, writing that in 2019, Bueno took 29 days off, so it was unclear why Bueno thought she had 13 days of vacation remaining. (Pl. Ex. 17A, Chickedantz Decl. ¶ 5, at EU-577). In response, Bueno detailed how some of her days off in 2019 were from accrued 2018 vacation days, and concluding she had eleven remaining vacation days from 2019. (*Id.* at EU-576-77).

74. Also on January 14, 2020, Marroqui forwarded Bueno's email (about having eleven days of accrued vacation) to Marta Sanjurjo, the director of human resources, (Def. Memo. at 2), asking, "Can you confirm for me that this is the case?" (Def. Ex. 114A [Doc. 139-19] at EU-1461).

75. On January 16, 2020, Plaintiff began taking estrogen in preparation for her IVF procedure. (Bueno Dep., 126:21-127:2; Bueno Decl. ¶ 12). That day, as a follow-up to her December 26, 2019 leave request, Plaintiff emailed Marroqui: "I'm going to book the plane and the most economical flight has me leaving on January 27 and returning on February 6, spending every vacation day for 2019." (Pl. Ex. 14A [Doc. 139-63] at EU-1333).

76. Also on January 16, 2020, Marroqui forwarded Plaintiff's email (about reserving airfare for January 27 through February 6) to Sanjurjo, stating, "I need to know how to proceed with this vacation of Marta Bueno." *(Id.)* Marroqui acknowledged at deposition that she forwarded this email to Sanjurjo for guidance on how to proceed. (Marroqui Dep., 84:6-12). Later that day, Marroqui wrote back to Bueno, stating, "I've again asked the DG and Marta [Sanjurjo]. They've told me they would tell me something today." (Pl. Ex. 15A, Chickedantz Decl. ¶ 4, at EU-1468); (Sanjurjo Dep., 110:21-25 ("DG" is a Spanish abbreviation for "general directors").

77. On January 17, 2020, Marroqui forwarded to Sanjurjo the January 14, 2020 email from Bueno about her eleven accrued vacation days, and Sanjurjo responded, "I see it, but it's

4

still not correct," and detailed how Bueno only had four days left for 2019, stating, "Perhaps she'll understand if you put it that way . . . ." (Pl. Ex. 17A, Chickedantz Decl. ¶ 5, at EU-576).

78. On January 20, 2020, as management was still trying to determine how many days of accrued vacation were available to her, Bueno emailed Sanjurjo, copying Marroqui: "Cristina [Marroqui] tells me that I should send you an email explaining the issue of the unused vacation days. Here are the details." (Pl. Ex. 18A, Chickedantz Decl. ¶ 6, at EU-581). Plaintiff detailed why there was a discrepancy of seven days in 2019, which had to do with Defendants requiring Bueno to cancel a vacation and remain in New York to cover for another employee; and that she had 21 unused days from 2018, partly due to a medical issue that barred her from travelling. (*Id.* at EU-581-82).

79. Later that day, on January 20, 2020, Marroqui forwarded the email from Bueno (explaining to Sanjurjo that she had accrued vacation days from 2018) to Teresa Jimenez—the supervisor to whom Bueno had reported in 2018 (Sanjurjo Dep., 88:3-11; 89:16-20), and Bueno's former "Area Manager" (*id.* at 101:15-19)—stating, "We have a discrepancy in the vacation days of Marta Bueno for 2018, and Marta Sanjurjo tells me I should ask you what medical situation arose in 2018 as a result of which Marta was unable to take her vacation time." (Pl. Ex. 18A, Chickedantz Decl. ¶ 6, at EU-581).

80. The next day, Jimenez responded by email to Marroqui: "Yes, she was in fact hospitalized on the day she was due to catch the plane. I am aware that she sent an email explaining the situation to Marta [Sanjurjo]. Ultimately she couldn't take it because they prohibited her from flying. I also remember that I reconfirmed with her that I had discussed it with you." (*Id.*) Marroqui forwarded Jimenez's email to Sanjurjo. (*Id.*)  Shortly thereafter, Sanjurjo responded to Marroqui:

5

> Can you ask Terry to share with you the vacation time she actually did take in 2018? I know it to be the case that Marta reported not having been able to catch the plane because she was sick, and that she later asked to take those vacation days from October 8 to 21, but it doesn't seem normal to me for her not to have informed you in early 2019 that she did in fact have unused vacation days. If she had unused days, wouldn't it be logical for her to take them over Christmas 2018? Vacation time can't be carried over in this way.

(*Id.* at EU-580).

81.  Also on January 21, 2020, in response to Marroqui's email request, Jimenez responded to Marroqui and Sanjurjo by email:

> The requests I have are for 14 days from August 13 to 26, being those that were put back to October and that were the two weeks that were owed from 2017. In addition to those 14 days that could not be taken in August, she took an additional week in October from October 1 to 7.
>
> From what I've been able to read in an email on which I was copied, she completed her vacation time for 2018 with a week that you (Cristina) authorized for her from July 1 to 7, 2019. From that point I don't recall what happened. I know she had to return to Spain and postpone her vacations because she had to return to NY so Pablo could go to Chicago.

(*Id.*)

82.  On January 22, 2020, Sanjurjo wrote comments within the text of the January 20, 2020 email from Bueno (explaining why she had accrued vacation days from 2018), and forwarded it to Marroqui and Jimenez, commenting, "I see that this topic is even more complicated. Let's see if we can reconstruct this. I've inserted my comments in red." (Pl. Ex. 19A, Chickedantz Decl. ¶ 7, at EU-583). Within the text of Bueno's email, Sanjurjo highlighted the sections where Bueno explained that she had accrued days from 2018, and said, "*This is where the problem lies.*" (Pl. Ex. 19A, Chickedantz Decl. ¶ 7, at EU-584 (emphasis in original)).

83.  Bueno went to Barcelona on January 26, 2020, with the understanding that she had management's authority to take her requested leave. (Bueno Dep., 81:1-13; 93:4-6; 100:17-101:16; 103:3-8; Marroqui Dep., 87:5-6; Bueno Decl. ¶ 13).

84. On January 27, 2020, Plaintiff began the IVF process in Barcelona. (Bueno Dep., 126:21-127:2; Bueno Decl. ¶ 14).

85. On February 2, 2020, Bueno sent an email to Marroqui stating, "I just wanted to remind you that I am in Barcelona because of the issue with my apartment so you won't get my commercial report as I obviously could not make any visits." (Pl. Ex. 26A [Doc. 139-71] at EU-2050).

86. On February 3, 2020, Marroqui wrote, "Do you have the ok for these days?" (Pl. Ex. 26A [Doc. 139-71] at EU-2049–50). Bueno responded, "I told you that I needed to come in advance and a few weeks ago I told you the days and you told me you would send it to GM[.] I thought that using vacation days would be the easiest way but if not tell me what would be best[.]" (*Id.* at EU-2049). In turn, Marroqui responded, "But if Marta Sanjurjo has not told you anything after all the exchanged emails and you know that vacations must always be authorize by your supervisor after the ok from GM. . . . Since when are you in Spain?" (*Id.*) Bueno responded, "ok I've been here for 1 week." (*Id.*)

87. In the evening of February 3, 2020, Marroqui emailed her weekly commercial report to Lopez. Her report included the following: "*Marta Bueno: claimed not submitted.*" (Pl. Ex. 22A [Doc. 139-69] at EU-872) (emphasis in original).

88. On February 4, 2020, as part of her IVF procedure, Bueno's embryo was transferred. (Bueno Dep., 128:7-10; Bueno Decl. ¶ 15.) Also on February 4, 2020, Marroqui forwarded the February 3 email exchange between herself and Bueno (about Bueno's presence in Spain) in separate emails to both Sanjurjo and Lopez (Pl. Ex. 26A [Doc. 139-71] at EU-2048), and Lopez' executive assistant, Judith Gonzalez, forwarded the email to Sanjurjo,[1] and asked,

---

[1] Sanjurjo testified that Judith Gonzalez was Lopez' executive assistant. (Sanjurjo Dep., 120:3-12).

"Did you authorize these vacation days for Marta Bueno?" *(Id.)* Sanjurjo responded, "I'll explain it to you later." (*id*.), to which Gonzalez responded, "The boss is asking!" (*Id.* at EU-2047). "The boss" refers to Lopez. (Sanjurjo Dep., 121:14-18).

89. Later that day, February 4, 2020, Sanjurjo emailed Lopez and addressing his assistant Gonzalez, wrote:

> The truth is it was my fault, let me explain . . .
>
> Marta asked Cristina for these days because she had to come to Barcelona for some issues related to papers for the apartment and she wanted to take advantage of the fact that, she said, she had vacation days pending.
>
> The fact is that when I told the boss he didn't understand why she didn't take her vacation during Christmas, but the fact is she did take a vacation in December ... we had to rebuild the days that she had really enjoyed because they didn't add up (Cristina had only 4 days pending) and it turns out that what we hadn't taken into account the fact that when she was on her approved vacation last year (from May 27 to June 9) we made her return to New York on June 2 because we sent Pablo to Chicago)
>
> The problem is I was commenting this with Cristina and I should have talked to Marta to tell her that the days were correct but it was not the best time for her to take them but I didn't ... however, Marta didn't ask again if it was ok (I suppose that as she sent me an email to explain the days that were missing she believed that was enough). I finally found out she was in Barcelona yesterday ...
>
> I'm sorry
>
> Best regards
> Marta

(Pl. Ex. 26A [Doc. 139-71] at EU-2047 (certified translation); *accord* Sanjurjo Dep., 123:6–124:18 (witness translation)).

90. On February 6, 2020, Bueno emailed Marroqui advising that she would have to delay her return to New York from February 6 until February 13, and would return to work on February 14. (Def. Ex. 116A [Doc. 139-23] at EU-591). Marroqui responded: "I was very surprised by this email because actually you are in Spain without the definitive approval of

8

Marta Sanjurjo, who I am copying for her records." (*Id.*)

91.　On February 10, 2020, in response to a request for work-related documents, Bueno emailed Coordinator of International Commercial Department Sofie Vandeweyer, copying Marroqui, advising that she was in Spain until Thursday for a personal matter, and that she would return to work on Friday and provide the documents at that time. (Pl. Ex. 30A [Doc. 139-73] at EU-1674). Marroqui forwarded the email to Sanjurjo, stating, "In the end, how should we proceed with Marta [Bueno]. I'm not sure if you've had the chance to discuss it with Mr. Lopez or if you've managed to speak with her?" (*Id.*) Later that day, Marroqui emailed her weekly commercial report to Lopez, including the following: "*Marta Bueno: unauthorized absence in Spain.*" (Pl. Ex. 31A, Chickedantz Decl. ¶ 8, at EU-882 (emphasis in original)).

92.　On February 11, 2020, Marroqui forwarded the February 10 email chain to Patricia Cereijo, Defendants' Chicago hotel manager (Bueno Dep., 71:3-5), stating, "I sent this email to Marta Sanjurjo yesterday because, to be honest, I don't know how we're going to proceed with Marta Bueno … No one has responded to me yet." (Pl. Ex. 32A [Doc. 139-75] at EU-1680–81). Cereijo responded, "I honestly don't understand anything . . . " (*Id*. at EU-1680.) Marroqui responded, "She's in Spain until Thursday, and I still don't know anything."). (*Id*.)

93.　Bueno returned to New York on February 13, 2020. (Bueno Dep., 104:21-105:2). The next day, Plaintiff learned that the IVF treatments had been successful and that she was pregnant. (Bueno Dep., 158:5-10).

**4. Plaintiff's pregnancy announcement and subsequent termination.**

94.　On February 18, 2020, Carla Isbert of the Law Department dispatched Cereijo to New York to inform Bueno that her employment was terminated. Isbert's email attached a termination letter that provided no reason for Plaintiff's termination. (Pl. Ex. 43A [Doc. 139-79]

at EU-300). According to Defendants' Response No. 9 in each of their three sets of interrogatory responses, Lopez was the only individual with authority to terminate Plaintiff's employment. (Exs. 49-51, Chickedantz Decl. ¶¶ 11-13).[2] But Lopez did not act alone. According to Defendants' Response No. 11 in their interrogatory responses, Lopez, Sanjurjo and Marroqui were all involved in the decision to terminate Bueno's employment. (*Id.*) While Lopez was the ultimate decisionmaker, according to Defendants' interrogatory Response No. 9, Marroqui played a meaningful role in that she informed Lopez by email to his assistant on February 4, 2020, that Bueno had taken an unauthorized vacation in Spain (Pl. Ex. 26A [Doc. 139-71] at EU-2048), informed Lopez again in her February 10, 2020 report (Pl. Ex. 31A, Chickedantz Decl. ¶ 8, at EU-882), and referred Plaintiff for termination. (Sanjurjo Dep., 33:8-18; 34:15-35:5; 53:13-16).

95.   On February 20, 2020, Plaintiff advised Marroqui that the IVF had been successful and that she was pregnant. (Bueno Dep., 204:16-22; Bueno Dec. ¶ 16).

96.   A few days later, on February 23, 2020, in an email to Lopez, Cereijo advised that she would go to New York the following week to terminate Bueno's employment. (Pl. Ex. 40A, Chickedantz Decl. ¶ 6, at EU-4626 and EU-4637).

97.   Without any justification from Defendants, Plaintiff was fired on February 25, 2020. (Def. Ex. 127 [Doc. 139-40] at MB-13; Bueno Decl. ¶ 17).

---

[2] Notably, Sanjurjo signed Defendants' Interrogatory responses served on October 6, 2023, (Pl. Ex. 50, Chickedantz Decl. ¶ 12), while Lopez signed Defendants' Interrogatory responses served on November 17, 2023 (Pl. Ex. 51, Chickedantz Decl. ¶ 13).

Dated: New York, New York
November 24, 2024

Respectfully submitted,

*/s/ Maria L. Chickedantz*
Maria L. Chickedantz, Esq.
CHICKEDANTZ LAW
112 Washington Ave, No. 1
Brooklyn, New York 11201
347-699-8784
maria@chickedantzlaw.com

*/s/ Stephen Bergstein*
Stephen Bergstein, Esq.
BERGSTEIN & ULLRICH
5 Paradies Lane
New Paltz, New York 12561
845-469-1277
steve@tbulaw.com

*/s/ Kevin J. Shehan*
Kevin J. Shehan, Esq.
SHEHAN LEGAL, PLLC
845 Third Avenue, 6th Floor
New York, New York 10022
917-740-7805
kevin@shehanlegal.com

*/s/ Paul S. Haberman*
Paul S. Haberman, Esq.
LAW OFFICES OF PAUL S. HABERMAN LLC
19 Engle Street, Tenafly,
New Jersey 07670 (All Mail)
88 Pine Street, 22nd Floor
New York, New York 10006
201-564-0590
psh@paulhabermanlaw.com

*Attorneys for Plaintiff*