UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTA BUENO,<br><br>*Plaintiff,*<br><br>vs.<br><br>EUROSTARS HOTEL COMPANY, S.L., FRONT PROPERTY HOTEL CORPORATION, and AMANCIO LÓPEZ SEIJAS, jointly and severally,<br><br>*Defendants.* | 1:21-cv-00535-MMG-RWL |

# DEFENDANTS' REPLY BRIEF

 

Brian C. Dunning
Irene Ribeiro Gee
Dunning Rievman & MacDonald LLP
1350 Broadway, Suite 2220
New York, New York 10018
(646) 873-7522
bdunning@drmlaw.com
iribeiro@drmlaw.com

*Attorneys for Defendants*

December 13, 2024

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I. EVEN IF THIS CASE WERE ABOUT PLAINTIFF'S IVF TREATMENTS, SUMMARY JUDGMENT WOULD STILL BE WARRANTED. ..................................... 5

    A. Plaintiff Has Not Made Out Her Prima Facie Case—There Is Not A Scintilla Of Actual Evidence That Defendants Were Aware of Plaintiff's IVF Treatments. ... 5

        1. Plaintiff cannot use a declaration to contradict her prior deposition testimony. ...................................................................................................... 5

        2. Plaintiff has admitted that she did not tell anyone about the IVF, and her conduct and documentary evidence corroborate this. ................................ 6

    B. Even if Plaintiff had indeed disclosed to Marroquí that she was pregnant, which is contradicted by the entirety of the record and even by Plaintiff's own testimony, the alleged knowledge of conducting IVF cannot be imputed to other employees. ................................................................................................................................ 10

    C. The Evidence Proving Bueno Was Terminated for Taking an Unauthorized Three-Week Vacation is Overwhelming. ......................................................................... 12

    D. The Stated Basis for Plaintiff's Termination Was Not a Pretext. .......................... 14

II. THE COURT SHOULD GRANT DEFENDANTS' ATTORNEYS' FEES. ................... 15

CONCLUSION ..................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Blue v. City of New York*, No. 14-cv-7836, 2018 WL 1136613 (S.D.N.Y. Mar. 1, 2018) ............. 6

*Forde v. Beth Israel Med. Ctr.*, 546 F.Supp.2d 142 (S.D.N.Y. 2008) ........................................ 5, 6

*Gallimore-Wright v. Long Island R. Co.*, 354 F.Supp.2d 478 (S.D.N.Y. 2002) ............................ 2

*Giova v. Kiamesha Concord, Inc.*, 92-cv-3935, 1993 WL 539530 (S.D.N.Y. Dec. 23, 1993) ....... 4

*Jackson v. City of New York*, No. 10-cv-7889, 2013 WL 541510 (S.D.N.Y. Feb. 14, 2013) ........ 4

*Johns-Davila v. City of New York*, No. 99-cv-1885, 2000 WL 1725418 (S.D.N.Y. Nov. 20, 2000) ................................................................................................................................................ 4

*Knight v. Nassau Cnty.*, No. 17-cv-0958, 2020 WL 4207439 (E.D.N.Y. July 22, 2020), aff'd, 852 F. App'x 42 (2d Cir. 2021) ..................................................................................................... 5

*Lambert v. McCann Erickson*, 543 F.Supp.2d 265 (S.D.N.Y. 2008) .......................................... 11

*Mack v. United States*, 814 F.2d 120 (2d Cir. 1987) .................................................................... 5

*Romero v. St. Vincent's Servs., Inc.*, No. 19-cv-7282, 2022 WL 2079648 (E.D.N.Y. June 10, 2022), aff'd, No. 22-cv-1476, 2023 WL 3477161 (2d Cir. May 16, 2023) ......................... 10, 11

*Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F.Supp.2d 163 (E.D.N.Y. 2005) .. 10, 11

*United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351 (2d Cir.1993) ................................................. 6

*Vuona v. Merrill Lynch & Co.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013) ........................................... 5

**Statutes**

FRCP 8 ...................................................................................................................................... 3, 4

# INTRODUCTION

Plaintiff no longer disputes the fact that the decision to fire her was made before she claims she told her supervisor that she was pregnant. Summary judgment can and should be entered for this reason alone.

Realizing that her case is lost, Plaintiff now claims that Defendants fired her because they knew she was undergoing IVF treatment. Below, Defendants will show that the *overwhelming documentary and testimonial evidence* proves that the Defendants never knew about her IVF treatments, and that they fired her on February 25, 2024, for having taken a three-week vacation without authorization in violation of a policy that she herself wrote.

This is not the first time that Plaintiff has tried to morph her case into something else in an effort to avoid the inevitable. In 2022, after Defendants' counsel *merely suggested* to Plaintiff's counsel that they *might* wish to have Plaintiff submit to an independent medical examination, Plaintiff amended her complaint (for the second time) to add multiple claims of retaliation. Judge Koeltl dismissed those claims as frivolous, and admonished Plaintiff and her counsel that "[t]he Court …expects that this episode will not be repeated." Opinion and Order, May 9, 2023, at p. 4.

This case should now be dismissed, and Plaintiff and her counsel should be held to account for their conduct. Together, they should be required to pay the Defendants' legal fees as well as the other costs Defendants have incurred in order to defend themselves.

# ARGUMENT

The Plaintiff has filed a brief opposing Defendant's motion, a declaration by her counsel, a response to Defendants' statement of undisputed material facts, and her own declaration and statement of additional undisputed material facts. Nowhere in any of these documents did she rebut Defendants' argument that, because the undisputed facts are that Defendants decided to

1

terminate her before she claims to have told her supervisor that she was pregnant, she has not made out a *prima facie* claim for pregnancy discrimination.

## I. PLAINTIFF HAS CONCEDED THAT DEFENDANTS DID NOT FIRE HER FOR BEING PREGNANT AND IS NOW TRYING TO REINVENT HER CLAIM, AGAIN.

Ordinarily, failure to respond to a movant's undisputed material facts alone would provide a basis for granting the Defendants' motion and dismissing her claims. *See, e.g., Gallimore-Wright v. Long Island R. Co.*, 354 F.Supp.2d 478 (S.D.N.Y. 2002) (where nonmovant failed to respond to 32 of 44 paragraphs of movant's statement of undisputed facts, they were deemed admitted).

Defendants moved for summary judgment based on the Plaintiff's claims that she was fired on February 25, 2020, *for being pregnant*. That allegation was at the heart of her notice of charge of discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC") (Def. Ex. 123; Bueno Dep. 191:12-192:3) and forms the basis of her Complaint (¶¶ 59 & 63)(claiming that Defendants violated the law "when they terminated Plaintiff from her employment upon discovering that she was pregnant"), First Amended Complaint ("FAC") (¶¶ 101, 104, 113, 121 & 129)(same), Second Amended Complaint ("SAC") (¶¶ 120, 128, 136, 140 & 148) (same formulation in ¶¶ 120, 128 & 136 and nearly identical formulation in ¶¶ 140 & 148) and proposed Third Amended Complaint ("TAC") (¶¶ 106, 110, 114, 118 & 122)(identical to Second Amended Complaint). Not a single cause of action in any of these versions of Plaintiff's complaint claims that her termination was based on the Defendants' alleged knowledge of her IVF treatments. The case should be dismissed based on Plaintiff's abandonment of her central claim alone.

Even if this case actually were about IVF treatments, Plaintiff would still fail to state a *prima facie* case of discrimination because the Defendants were unaware of those treatments.

2

Defendants have proven that their reason for firing her was that she took a three-week vacation without authorization, which she knew was required to be obtained in advance and in writing. The Plaintiff has filed brief a [declaration of her counsel](), a [response to Defendants' statement of undisputed material facts](), and her own [statement of additional undisputed material facts](). [*Gallimore-Wright v. Long Island R. Co.*, 354 F.Supp.2d 478 (S.D.N.Y. 2002)]()(where nonmovant failed to respond to 32 of 44 paragraphs of movant's statement of undisputed facts, they were deemed admitted).

Instead of rebutting the Defendants' arguments, Plaintiff now claims that she was terminated because she was undergoing IVF treatment—a form of pregnancy discrimination. The most serious problem for Plaintiff is that she did not sue the Defendants for pregnancy discrimination based on knowledge of IVF treatments. Rather, for nearly five years she has claimed, and the parties have intensely litigated, that the Defendants fired her five days after they learned about her pregnancy. The brief review in the Introduction to this brief of the four versions of Plaintiff's complaint makes clear that Plaintiff's claims have always been based on this sequence of events, and nothing more.

The Court need not rely only on the pleadings to determine that this case has been about the fact and alleged discovery of Plaintiff's pregnancy. The Court can consider the Plaintiff's own contemporaneous statements to important people in New York's Spanish community that she was fired because she (allegedly) told Defendants she was pregnant. In two emails she sent on March 3, 2020—one to the commercial officer of the Spanish Embassy based in New York, and the other to the Director of Catalonia's delegation to the U.S.—Plaintiff stated that "last week the company fired me after devoting 13 years to them, it seems that giving notice of pregnancy was not a good idea. . . ." in one, and in the other said, "I no longer work for Eurostars

3

since they fired me last Tuesday, it seems that giving notice of pregnancy was not a good idea in spite of having been in the company for 13 years. . . ." Def. Ex. 142A; 143A.

Rule 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise and direct." FRCP 8(a)(2), (d)(1). Plaintiff has four experienced attorneys as her counsel. The Court can and should assume that, had Plaintiff meant to claim she was fired for undergoing IVF treatments, her counsel would have included "a short and plain statement" of "simple, concise and direct" allegations about that in her causes of action. *See id*.

Federal courts in New York have said "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Jackson v. City of New York*, No. 10-cv-7889, 2013 WL 541510, at *6 (S.D.N.Y. Feb. 14, 2013) (granting summary judgment to the defendant where the plaintiff asserted two new adverse employment actions for the first time on summary judgment); *see also Giova v. Kiamesha Concord, Inc.*, 92-cv-3935, 1993 WL 539530 at *5 (S.D.N.Y. Dec. 23, 1993) (allegations absent from pleadings cannot be considered on a summary judgment motion); *Johns-Davila v. City of New York*, No. 99-cv-1885, 2000 WL 1725418, at *7 (S.D.N.Y. Nov. 20, 2000) (declining, in a disability discrimination action, to consider the plaintiff's newly raised allegation of inability to work, which was first introduced in opposition to summary judgment, when the plaintiff had originally claimed in her complaint that her disability merely limited her ability to exercise).

In point of fact, this case has *always* been about the alleged discovery of Plaintiff's actual pregnancy, and not her IVF treatments. That is why Plaintiff's notice of charge mentions only the discovery of her pregnancy as the reason she was fired (Def. Ex. 123) and why three versions of Plaintiff's complaint and one proposed complaint all base her claims on the discovery of her

pregnancy, and not on alleged knowledge of her IVF treatments. For this reason alone, Defendants' motion for summary judgment should be granted.

## II. EVEN IF THIS CASE WERE ABOUT PLAINTIFFS IVF TREATMENTS, SUMMARY JUDGMENT WOULD STILL BE WARRANTED.

As discussed in Point I above, Plaintiff has conceded that Defendants decided to terminate Plaintiff even before she was aware that she was pregnant. *See* Pl.'s Undisputed Material Facts ¶ 47. Now, for the first time in her opposition papers, Plaintiff argues that she was terminated for undergoing IVF. *See* Pl. Opp. Mot. Summ. J., at 1 (emphasis added). This shift does not save her case.

### A. Plaintiff Has Not Made Out Her Prima Facie Case—There Is Not A Scintilla Of Actual Evidence That Defendants Were Aware of Plaintiff's IVF Treatments.

In a procedurally inappropriate declaration, Plaintiff pivots to her new theory of the case, claiming that her main complaint is that she disclosed to Ms. Marroquí that she intended to undergo IVF. *See* Pl.'s Decl. ¶¶ 8-11. However, Plaintiff's own testimony during her deposition directly contradicts these allegations in her declaration.

#### 1. Plaintiff cannot use a declaration to contradict her prior deposition testimony.

The Second Circuit holds that "[i]t is well settled in this circuit that a party's affidavit [or declaration] which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987); *Vuona v. Merrill Lynch & Co.*, 919 F.Supp.2d 359, 391 (S.D.N.Y. 2013) (gender discrimination plaintiff could not offer declaration testimony that contradicted her deposition testimony); *Knight v. Nassau Cnty.*, No. 17-cv-0958, 2020 WL 4207439, at *14 (E.D.N.Y. July 22, 2020), aff'd, 852 F. App'x 42 (2d Cir. 2021) (plaintiff's declaration complaining of racism was ineffective to defeat summary judgment because "a party may not create an issue of fact by submitting an

5

affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"). Where such a discrepancy exists, the Southern District has disregarded the affidavit or declaration and relied on the deposition testimony. "This is particularly the case where the sworn deposition testimony concerns facts . . . at the core of a plaintiff's claim." *Blue v. City of New York*, No. 14-cv-7836, 2018 WL 1136613, at *2 (S.D.N.Y. Mar. 1, 2018) (disregarding plaintiff's second amended complaint because it contradicted prior deposition testimony, and thus was "not accompanied by citation to admissible evidence"). Therefore, "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony." *Id*. For these reasons, the Court should disregard Plaintiff's declaration.

### 2. Plaintiff has admitted that she did not tell anyone about the IVF, and her conduct and documentary evidence corroborate this.

Plaintiff's claim that she told Ms. Marroquí that she would undergo IVF treatments in Barcelona in January is contradicted by her *own* statements, medical records, and a vast email record of emails between her and Defendants' representatives in which she *never* mentions IVF treatments—not even to explain her absence from New York when Ms. Marroquí confronted her about it.

Never once in the many emails between only her and Ms. Marroquí did she raise IVF, relying instead only on her excuse that she needed to fix her apartment. Defs.' Undisputed Material Facts ¶ 28; Bueno Dep. 89:12-91:21; Def. Ex. 114A. It is simply not credible that Plaintiff would write those emails justifying her absence only due to issues with a tenant and while claiming she had confided about her IVF plans with her supervisor and purported close friend. *See* Bueno Dep. 92:7-18. Again, it is particularly bizarre that she would not have raised

6

her IVF treatments when confronted about her unauthorized absence. Defs' Undisputed Material Facts ¶ 36; *see* Def. Ex. 116A.

In her deposition, Plaintiff again relied exclusively on her tenant change as the only reason she went to Barcelona. *Id.* 89:12-93:21. Defendants' counsel even asked if there was any other reason. *Id.* at 91:13-19. Plaintiff did not offer any other reason, testifying instead, "[t]his was the reason for which I requested these days." *Id.* at 91:20-21.

Plaintiff's declaration states that on January 3, 2020, she told Ms. Marroquí that she would be undergoing IVF later in January. Pl.'s Decl. ¶ 10. However, an email between Plaintiff and her IVF clinic reveals that Plaintiff herself was unsure whether IVF would proceed because, prior to getting the green light to pursue the treatments, she would have to submit to certain tests that were not complete until January 15, 2020. Def. Ex. 122B. It is not credible that Plaintiff would tell Ms. Marroquí on January 3, 2020, that she planned to undergo IVF later the same month when Plaintiff herself did not know if the IVF would proceed.

Next, the Court granted Defendants' motion to compel Plaintiff to produce copies of her call logs reflecting discussions between Plaintiff and others about her pregnancy, specifically ordering Plaintiff to engage in reasonable efforts to locate them—she did not produce any. *See* Order, June 12, 2024. Plaintiff was warned during the hearing that she would have to live with the consequences of her failure to provide this evidence. The Court should infer that no such call took place.

Finally, in her declaration Plaintiff contradicts her own deposition testimony. During the deposition, Plaintiff testified she told Ms. Marroquí in December 2019 about undergoing IVF treatments. *See* Defs.' Undisputed Material Facts ¶ 40; Bueno Dep. 229:14-19. In her declaration, however, Plaintiff again changes her story stating that she disclosed the timing of the

7

IVF on January 3, 2020. Pl.'s Decl. ¶ 10. In light of the overwhelming evidence indicating there was no discussion about IVF, and Plaintiff's multiple contradictory statements, the Court should disregard paragraphs 7-11 of Plaintiff's Declaration.

> **a.  There is a large written record in which Plaintiff says only that she is going to Barcelona to deal with her apartment. There is no written reference to IVF in the communications between Defendants and Plaintiff.**

In the many emails produced in this case, Plaintiff consistently cited dealing with a tenant as the sole reason for her need to return to Barcelona. Until her declaration of November 4, 2024, this was her only reason for additional vacation. *See* Pl.'s Undisputed Material Fact ¶¶ 28, 30; 31; Bueno Dep. 89:8-93-21; 91:19-92:6, Def. Ex. 114A, at EUROSTARS001462; Sanjurjo Dep. 76:7-77:25; Pl. Ex. 14.

The deposition record equally does not support Plaintiff's allegations. Plaintiff testified that the only reason she went to Barcelona was to deal with a tenant. Bueno Dep. 91:7-21. Ms. Marroquí categorically denied Plaintiff's allegation that she knew anything about Plaintiff's plans, and the testimony of both Amancio López and Marta Sanjurjo similarly discredit Plaintiff's wholly speculative allegations that the corporate defendants, Ms. Sanjurjo and Mr. López had any idea Plaintiff was undergoing IVF at that time. Marroquí Dep 78:2-15; Sanjurjo Dep. 66:5-10; López Dep. 128:16-21.

> **b.  Ms. Marroquí testified that Plaintiff did not tell her that she was going to undergo IVF treatment in January 2020.**

Ms. Marroquí testified that Plaintiff neither told her that her leave in January and February 2020 would include her receiving IVF treatments nor that she wanted to undergo IVF at all. Ms. Marroquí also testified that she did not tell Plaintiff anything about Mr. López's opinions or feelings concerning IVF or pregnancy. Marroquí Dep. 78:2-15.

8

### c. Ms. Sanjurjo testified that she was not aware of Plaintiff's intent to undergo IVF.

Plaintiff has not alleged that she told Ms. Sanjurjo she was going to undergo IVF treatment, and Ms. Sanjurjo testified she was not aware Plaintiff had any intention to undergo IVF or that she in fact had undergone IVF. Ms. Sanjurjo also denied any knowledge that Mr. López and the Corporate Defendants were somehow hostile to the idea of mothers in the workplace. Sanjurjo Dep. 66:5-68:13.

### d. Mr. López testified that he was not aware of Plaintiff's pregnancy or IVF.

Plaintiff has not alleged that she told Mr. López that she was undergoing IVF treatment, and Mr. López testified that he knew nothing about Plaintiff's pregnancy or intentions to undergo IVF. López Dep. 128:16-21. In his testimony, he also repudiated in no uncertain terms Plaintiff's accusations that he is biased against women, women who get pregnant, or women who undergo IVF. *Id.* at 129:2-22. He explained clearly that in a company with well over 4,000 female employees, some were bound to get pregnant in any given year. *Id.* That is not misogyny, as Plaintiff predictably claims, but simple logic available to the average human being possessed of the most basic powers of observation. Mr. López also rebutted the Plaintiff's allegation that he does not like it when female employees get pregnant because it costs the company money—he makes it clear that, in Spain, the government pays the mother for maternity leave. *Id.* at 129:23-132:19. The allegations in Paragraph 73 of the SAC, which should have been alleged upon information and belief, and not actual knowledge, are simply false.

> Shortly thereafter, based on Ms. Marroquí's close contact and regular communication with Defendant López Seijas over all personal matters of Defendants' employees, Ms. Marroquí advised Defendant López Seijas that Plaintiff would soon undergo IVF treatments.

9

The documentary evidence is that Mr. López did not instigate Plaintiff's termination. Ms. Sanjurjo received complaints from Ms. Marroquí about Plaintiff's absence without leave and about Plaintiff's continued failure to deliver reports as they became due. Bueno Dep. 63:14-19; 67:12-18; 93:18-96:1; 100:9-16; Def. Ex. 106A, 107A, 108A, 109A,115A, 134A; Pl. Ex. 38.

### B. Even if Plaintiff had indeed disclosed to Marroquí that she was pregnant, which is contradicted by the entirety of the record and even by Plaintiff's own testimony, the alleged knowledge of Plaintiff's IVF cannot be imputed to other employees.

At the prima facie stage, the plaintiff must prove that termination occurred under circumstances giving rise to discriminatory intent by the employer. *Romero v. St. Vincent's Servs., Inc.*, No. 19-cv-7282, 2022 WL 2079648, at *5 (E.D.N.Y. June 10, 2022), aff'd, No. 22-cv-1476, 2023 WL 3477161 (2d Cir. May 16, 2023). A plaintiff cannot prove an inference of discrimination without showing that the employer knew that she was a member of the protected class. *Id.* (stating, "'in cases where a plaintiff's membership in ... a [protected] class is not necessarily obvious, such as pregnancy or religion, a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant. A plaintiff must therefore produce some evidence demonstrating that the employer was aware of her protected status in order to establish a prima facie case.') (citing *Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F.Supp.2d 163, 167 (E.D.N.Y. 2005) (emphasizing, "[we] cannot presume that an employer most likely practiced unlawful discrimination when it does not know that the plaintiff even belongs to the protected class. The employer's knowledge, in this class of cases, is a critical element of the plaintiff's prima facie case.").

Critically here, discriminatory intent by the employer cannot be shown where a plaintiff takes steps to conceal that she was undergoing IVF. *Id.* at *6 (granting summary judgment to defendant where there were no genuine issues of fact relating to the employer's knowledge).

Knowledge may not be imputed to an employer where the plaintiff cannot prove that the individuals who made the decision to terminate her knew of her protected status when the decision to terminate was made. *Stainkamp*, 373 F.Supp.2d 163, 167 (E.D.N.Y. 2005) (finding that knowledge should not be imputed to the company's management even where plaintiff told some co-workers).

Just as the Plaintiff in *Romero* did, Plaintiff took steps to conceal her plan to undergo IVF, did not take advantage of sick leave or otherwise inform anyone at her employer of her plans to undergo IVF. *See* 2022 WL 2079648, at *5; Def Ex. 110 at EUROSTARS0004750, § 3.3. Moreover, just as in *Stainkamp*, Ms. Marroquí's alleged knowledge cannot be imputed to Ms. Sanjurjo who made the decision to terminate her. *See* 373 F.Supp.2d at 167; Defs.' Undisputed Material Facts ¶ 47. Ms. Sanjurjo denied knowledge of Plaintiff's IVF plans, and Plaintiff does not even allege, much less establish that Ms. Sanjurjo knew about Plaintiff's IVF plans. Sanjurjo Dep. 66:5-68:13. Moreover, Plaintiff could have submitted a formal sick leave request in accordance with Defendants' employment handbook but chose not to do so. Def. Ex. 110, Section 3.5, EUROSTARS 004751. As for Mr. López, Plaintiff's contorted allegation in paragraph 73 of the SAC has no evidentiary value and is directly contradicted by testimony by Mr. López. López Dep. 129:2-22.

Similarly, at the pretextual stage, a discriminatory motive to terminate must be shown, and there can be no discriminatory motive where the employer is unaware of the employee's protected status. *Romero*, 2023 WL 3477161, at *2 (holding that the termination was not driven by discriminatory motives, and therefore, was not a pretext for discrimination). Knowledge of plaintiff's protected status may also not be imputed to the employer when attempting to prove that the employer's proffered reason for termination is a pretext. *Lambert v. McCann Erickson*,

11

543 F.Supp.2d 265, 280 (S.D.N.Y. 2008) (explaining that a lack of knowledge of plaintiff's protected class on behalf of the decision-makers responsible for termination, and supervisors, whose negative assessments were relied upon for the termination decision, demonstrates that plaintiff's protected status was not a motivating factor for dismissal); *see also* Forde, 546 F.Supp.2d at 148, n. 8 (describing that speculative evidence was not sufficient to impute knowledge of pregnancy to plaintiff's supervisor).

### C.   The Evidence Proving Bueno Was Terminated for Taking an Unauthorized Three-Week Vacation is Overwhelming.

In response to Defendants' well-documented argument that she was not authorized to take vacation in late January 2020, Plaintiff claims she had "tacit" approval. Defs.' Undisputed Material Facts ¶ 33. Plaintiff's claim of authorization was clearly manufactured to fill a major gap in her case. But it just does not hold up.

To begin, in her deposition, Plaintiff testified that she wrote the U.S. employee handbook and that it applied to her. Pl.'s Undisputed Material Facts ¶¶ 13; 16-19; Def. Ex. 110. She also conceded that, with respect to employee time off, the handbook made plain that requests for time off had to be made in writing, and that all approvals of time off had to be made by the employee's supervisor, also in writing. *Id.* The handbook Plaintiff wrote also informs employees that "[u]nacceptable conduct may subject the offender to disciplinary action, up to and including discharge, in the Company's sole discretion," and that "[t]he following are examples of some, but not all, conduct which can be considered unacceptable:". . .

> 7. Failure to follow lawful instructions of a supervisor.
>
> 8. Failure to perform assigned job duties.
>
> 9. Violation of the Punctuality and Attendance Policy, including but not limited to irregular attendance, habitual lateness or unexcused absences.
>
> 17. Unsatisfactory job performance.

> 18. Any other violation of Company policy.
>
> Eurostars Hotels reserves the right to impose whatever discipline it chooses, or none at all, in a particular instance. . . . Eurostars Hotels will endeavor to utilize progressive discipline but reserves the right in its sole discretion to terminate the employee at any time for any reason.[1]

In practice, starting in 2019, employees were supposed to make their requests *via* an online platform called Success Factors. Plaintiff admitted that she was aware this was the practice. Plaintiff admitted that she had made her prior request for time off during the 2019 holidays via Success Factors, and that her supervisor approved her request in advance, also via Success Factors. Bueno Dep. 93:4-17; see Defs.' Undisputed Material Facts ¶ 21, and subsequent response and reply thereto.

Before even getting to the stage of submitting her second vacation request via Success Factors (which in fact she never did), Plaintiff engaged in a lengthy, if sporadic, email conversation with her supervisor (Ms. Marroquí) and then with the head of human resources (Marta Sanjurjo) about the number of vacation days that were available to her in January 2020. This conversation continued even after January 16, 2020, the day on which Plaintiff bought her plane knowing that her leave had not yet been approved. Def. Ex. 114; Sanjurjo Dep. 53:17-54:4; 54:18-56:4; 76:7-77:25; Pl. Ex. 14.

Ms. Sanjurjo's email to Mr. López's assistant does *not* say that Plaintiff's vacation was authorized, or that Plaintiff was right to assume it was. Pl. Ex. 26A. All it says is that there was some confusion about the number of days to which Bueno was entitled. *Id.* Nowhere in that email does Ms. Sanjurjo say her leave request was approved, and in her deposition she reiterated this point. *Id.* In fact, in her email Ms. Sanjurjo says that she planned to tell Plaintiff , whether

---

[1] Plaintiff proffers the absurd argument that because group chairman López was not familiar with the policy, it somehow did not exist. *See* Pl.'s Undisputed Material Facts ¶ 13.] In light of Plaintiff's own involvement in the preparation of the employee handbook, this argument cannot be made with a straight face.

13

she still had available vacation days or not, late January and early February was not a good time for her to take more time off. Id. This is the way vacation requests are meant to be managed. The supervisor looks at convenience to the company. Def Ex. 110 at EUROSTARS0004750-4751, § 3.3; Pl.'s Undisputed Material Facts ¶¶ 17-19.

During the deposition of Plaintiff's former colleague, Marco Orru, Plaintiff's counsel asked, "How did you know that Plaintiff did not have approval for the leave that she ended up–" Orru Dep. 81:12-14. Mr. Orru responded, "She told me. She told me, with or without authorization I will go there." Id. at 81:15-16. And then there are Plaintiff's own words to her supervisor, Ms. Marroquí, when the latter discovered that Plaintiff was in Spain without any authorization: "I am sorry that I came on days to which I was not entitled." Def. Ex. 116A

### D. The Stated Basis for Plaintiff's Termination Was Not a Pretext.

Plaintiff argues that, notwithstanding the overwhelming evidence that Defendants did not know about her IVF treatments and that she was fired because she took an unauthorized vacation of three weeks, a jury could still find that Defendants were somehow motivated by a discriminatory intent based on alleged knowledge of her IVF treatments. In support of this argument, she cites to what she calls shifting explanations as to who fired Plaintiff. This is not the case—Ms. Marroquí, Ms. Sanjurjo and Mr. López all played *some* role in terminating Plaintiff, even if Ms. Sanjurjo made the final decision. Pl. Mem. Opp. Summ. J. at 19-23. This is also irrelevant. What is important here is *the motive* for her termination, not the identity of the terminator. At no point has the reason for her termination ever shifted. Rather, Defendants have consistently said, and the vast email history supports, that they terminated Plaintiff because of her unauthorized leave. Sanjurjo Dep. 135:19-136:25; Marroquí Dep. 65:22-66:5; Lopez Dep. 41:13-17.

As Defendants have argued above the only evidence that any Defendant knew about Plaintiff's IVF treatments is her statement that she told Ms. Marroquí about this on one or two occasions. Ms. Marroquí has denied this. Ms. Sanjurjo and Mr. López have also denied ever knowing about Plaintiff's IVF treatments. Marroquí Dep. 78:2-15; Sanjurjo Dep. 66:5-68:13; López Dep. 128:16-21.

Plaintiff also relies heavily on her own recounting of conversations she claims she had with Ms. Marroquí in which the latter allegedly told Plaintiff that the company, and in particular Mr. López, do not like it when employees become pregnant because it costs money. Ms. Marroquí, who herself had a baby after Ms. Bueno was terminated (Marroquí Dep. 79:16-80-24), and works for Eurostars to this day, denies having said these things. Mr. López, for his part, denied that those are his views.

Even in the face of rock solid evidence that she was fired because she took a lengthy leave of absence without authorization, Plaintiff believes that a jury should be permitted to extrapolate from her alleged statements to Marroquí that there was a vast internal conspiracy to fire her because of her IVF treatments. There is, again, not even a *scintilla* of evidence that this was the case. Nowhere in the documents is IVF mentioned and, as mentioned above, Plaintiff actually went to great lengths to hide her IVF treatments. There is simply no evidence on which a rational jury could find that Defendants fired Plaintiff as a pretext for discrimination.

### III.     THE COURT SHOULD GRANT DEFENDANTS' ATTORNEYS' FEES.

This Court dismissed Plaintiff's retaliation claims on May 9. 2023. On that occasion, the Court observed that while the Court would not grant Defendants' attorney's fees, it expected the episode of Plaintiff's frivolous litigation tactics not to be repeated. "However frivolous the retaliation claims may be, the defendants have not demonstrated that they were brought in bad faith, i.e., motivated by improper purposes such as harassment or delay.  The Court nonetheless

15

expects that this episode will not be repeated." Order, dated May 9, 2023. It has been repeated, and Plaintiff and her counsel should be made to account for that by paying Defendants' legal fees and costs.

## CONCLUSION

For reasons only she knows, Marta Bueno made a decision fraught with risk—she decided to take a lot of time off without permission, perhaps hoping that nobody would notice. Defendants noticed, and they fired her for that poor decision, which any employer would do. Not willing to live with the consequences of her decision, she and her attorneys have engaged in all manner of deceit and have acted in bad faith. Not only have they litigated claims they have known all along to be false, but they have gone out of their way to impugn the integrity of Defendant López (accusing him in Plaintiff's Amended Complaint of having an inappropriate relationship with Plaintiff's supervisor, Cristina Marroquí) and even that of Defendants' counsel (accusing lead counsel in one of her amended complaints of having told Plaintiff that Defendants had fired her in violation of the law).

There is no reason for this case to be submitted to a jury. The undisputed, genuine, material facts support a finding that Plaintiff was terminated for taking a lengthy vacation without permission, and that she was not the victim of pregnancy discrimination.

Dated:   New York, New York
         December 13, 2024

 

Brian C. Dunning
DUNNING RIEVMAN & MACDONALD LLP
1350 Broadway, Suite 2220
New York, New York 10018
(646) 873-7522
bdunning@drmlaw.com

*Attorneys for Defendants*

17