UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTA BUENO,<br><br>                *Plaintiff,*<br><br>vs.<br><br>EUROSTARS HOTEL COMPANY, S.L., FRONT PROPERTY HOTEL CORPORATION, and AMANCIO LÓPEZ SEIJAS, jointly and severally,<br><br>                *Defendants.* | 1:21-cv-00535-MMG-RWL |

**DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(B) AND INDIVIDUAL RULES AND PRACTICES II(B)(9)(II)**

       Defendants Eurostars Hotel Company S.L., Front Property Hotel Corporation, and Amancio López Seijas ("Defendants") hereby submit the following response to Plaintiff's Statement of Additional Material Facts, pursuant to Local Civil Rule 56.1(b) and this Court's Individual Rules and Practices II(B)(9)(ii).

**General Objection to the Propriety of Plaintiff's Additional Material Facts**

       To the extent that Plaintiff's proposed additional material facts are not relevant to the decision on the pending motion for summary judgment, Defendants request that the Court strike or disregard them.

       **1.     Plaintiff's employment with Defendants.**

       62.     In October 2007, Plaintiff Marta Bueno began working as a Duty Manager in one of Defendants' hotels in Barcelona. (Bueno Dep. [Def. Ex. 137, Doc. 139-55, hereinafter "Bueno Dep."] 54:3-7). Plaintiff was hired by Defendant Amancio López Seijas ("López"). (Plaintiff Decl. ¶ 2).

1

**RESPONSE**: Defendants refer this Court to Paragraphs 13-15 to Defendants' Statement of Undisputed Material Facts (Defendants' Statement of Undisputed Material Facts, ECF#135, hereinafter "Defs.' Undisputed Material Facts," all of which were undisputed by Plaintiff; *see* Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, ECF#142, hereinafter "Pl.'s Undisputed Material Facts"). As to the statement that Defendant López hired Ms. Bueno, this statement is contradicted by Plaintiff's own admission in Paragraph 13 that Plaintiff was hired by her first employer, World Trade Center Hotel, S.L. (*See id.* at ¶ 13).

63. In October 2013, Bueno was transferred to New York City and appointed General Manager for the Eurostars Wall Street Hotel in Manhattan at 129 Front Street. (*Id.* at ¶ 3). Plaintiff's 2013 transfer to New York was a promotion. (Sanjurjo Dep. [Def. Ex. 139, Doc. 139-57, hereinafter "Sanjurjo Dep."], 57:11-22).

**RESPONSE**: Undisputed.

64. Due to her outstanding performance, Plaintiff was again promoted in 2015 by López to the position of Chief Operating Officer ("COO") of Defendants' New York City hotels, including the hotels at 129 Front Street and 52 East 41st Street. (Plaintiff Decl. ¶ 4).

**RESPONSE**: Disputed. Ms. Bueno was questioned during her deposition about the inappropriate use of the title COO on her resume and she admitted that she performed the role of COO while one of Ms. Bueno's colleagues was on maternity leave. (*See* Bueno Dep. 59:11-61-22.). Furthermore, there is ample record that Plaintiff's performance was not only not outstanding, but it was actually poor. In fact, Plaintiff admitted in her deposition that her supervisor requested substantive changes from how she discharged her role as a sales manager. (*See* Pl.'s Undisputed Material Facts ¶¶ 22-26). As for Mr. Orru's commentary on her job performance (Orru Dep. 72:14-19, 93:2-6), it must be noted that Mr. Orru worked with Plaintiff for less than three months.

(Orru Dep. 67:6-13). He also had criticisms about the way Plaintiff was performing her role before he started in his role, calling it: "whisy-washy sales" and "no good." (Orru Dep. 71:12-19). It was in the context of revamping Eurostars' sales strategy that Mr. Orru testified that she had great feedback, and that she understood the "new strategy." (Orru Dep. 71:20-72:19).

65. In 2017, Bueno was temporarily relocated to Miami to open two Eurostars hotels. (*Id*. at ¶ 5). Later in 2017, Bueno helped open a Eurostars hotel in Chicago. (*Id*. at ¶ 6).

**RESPONSE**: Disputed. Defendants state that these facts are not material to the dispute and are not relevant to the decision of the motion before the Court. Subject to and without waiving the procedural propriety of Ms. Bueno's statement, Ms. Bueno supported the opening of at least one hotel in Miami with respect to specific issues such as liquor license and perhaps another hotel in Chicago. (Sanjurjo Dep. 59:3-60:7).

### 2. Plaintiff's close relationship with Supervisor Marroqui.

66. In 2018, and while still in New York, Bueno was transferred to the position of Sales Manager in Defendants' Commercial Division, supervised by Cristina Marroqui. (Marroqui Dep. [Def. Ex. 140, Doc. 139-58, hereinafter "Marroqui Dep."], 18:5-7; 18:12:24-13:12; 19:11-15; Sanjurjo Dep., 60:23-61:4; Bueno Dep., 33:20-22; 61:19-62:5).

**RESPONSE**: Undisputed.

67. Marroqui and Plaintiff became close friends, as they (a) socialized outside of work (Marroqui Dep., 25:12-18, 27:11-21); (b) often discussed personal matters (Marroqui Dep., 28:23-29:6); (c) had nicknames for each other (Marroqui Dep., 41:22-23; 48:22-49:8; Pl. Ex. 4A [Doc. 139-61] at EU-553); (d) Marroqui borrowed clothing from Plaintiff (Marroqui Dep., 42:20-25; Pl. Ex. 4A [Doc. 139-61] at EU-553); (e) they called each other "my darling" (Marroqui Dep., 51:2-6; 52:6-8; 53:17-20, Pl. Ex. 4A [Doc. 139-61] at EU-552); and (f) Bueno concluded a WhatsApp communication to Marroqui with the word "kisses." (Marroqui Dep., 61:12-15 (Marroqui's

3

translation); *cf.* Pl. Ex. 4A [Doc. 139-61] at EU-559 (Defendants' certified translation: "warm regards").

**RESPONSE**: Disputed. Ms. Marroquí denied in her deposition that Ms. Marroquí and Ms. Bueno were friends, much less close friends. (Marroquí Dep. 27:2-10). Mr. Keith Gorla (Plaintiff's husband) also described Ms. Bueno's relationship with Ms. Marroquí as "strictly business." (Gorla Dep. 60:21-62:14). Ms. Marroquí testified that during the few times she socialized with Marta outside of work she talked about family and friends and that Plaintiff discussed with her a miscarriage Ms. Bueno had in 2018. (Marroquí Dep. 28:21-30:7). Ms. Marroquí denied ever discussing IVF with Ms. Bueno. (Marroquí Dep. 78:2-79:6).

68.    On a 2018 trip to Boston, Marroqui texted Plaintiff: "I can't wait to see youuu." (Pl. Ex. 4A [Doc. 139-61] at EU-551; Marroqui Dep., 35:20-24). While in Boston together, they socialized and had lunch together at every opportunity. (Marroqui Dep., 40:19-41:7).

**RESPONSE**: Undisputed.

69.    In 2018, Bueno suffered the loss of a pregnancy due to an ectopic pregnancy. (Bueno Dep., 32:13-16). Bueno confided in Marroqui about this event (Marroqui Dep., 30:3-7; 132:5-8), and Marroqui told Plaintiff that she could count on Marroqui if she needed to talk, or if she had pregnancy-related issues that "could affect her work." (Marroqui Dep., 56:18–58:16, 60:20-25).

**RESPONSE:** Disputed. Ms. Marroquí did not say that she told Marta that she could talk to her if she had pregnancy-related issues. Following Plaintiff's ectopic pregnancy and subsequent miscarriage, Ms. Marroqui noted that "*if you need to talk, know that you can count on me. But you need to focus, and if you need to rest you can take a break and take care*." (Marroquí Dep. 57:9-59:14).

4

### 3. Plaintiff's leave request and subsequent trip to Barcelona and IVF treatments.

70. In September 2019, Bueno told Marroqui that she wanted IVF treatments because she was having difficulties getting pregnant naturally. (Bueno Dep., 229:11-16; Bueno Decl. ¶ 7). Bueno said it was cheaper to receive IVF treatments in Barcelona. (Bueno Decl. ¶ 8). When Plaintiff and Marroqui returned to this discussion in December 2019 (Bueno Dep., 223:14-224:7; 228:5-230:10), Marroqui stated, in sum and substance, "that's nice, but, you know this company . . . López doesn't like people taking leave because it ends up being a cost for the company. He wants employees to work no matter what." (Bueno Decl. ¶ 9).

**RESPONSE:** Disputed. Ms. Marroquí denied ever discussing IVF with Ms. Bueno. (Marroquí Dep. 78:2-79:6). There is no record that when Ms. Bueno requested additional time off in January-February 2020, Ms. Bueno informed anyone at Eurostars that she was doing so because she was going to undergo IVF. In fact, when questioned during her deposition why she did not inform on her emails that she was going to undergo IVF, Ms. Bueno stated that because it was a personal matter and because she had already explained that she needed to go back because of issues with her apartment in Barcelona. (Bueno Dep. 226:13-230:8). Ms. Bueno did not state in her deposition that she was having difficulty getting pregnant.

71. On December 26, 2019, while on Christmas vacation in Barcelona, Plaintiff emailed a leave request to Marroqui, advising she had to return to Barcelona around January 21, 2020 until February 1, 2020 or soon thereafter to manage a tenant matter. (Pl. Ex. 11A, attached to the Declaration of Maria Chickedantz. Esq. ["Chickedantz Decl."] ¶ 3, at EU-1066).

**RESPONSE:** Undisputed, except that Defendants dispute whether the email represented the proper procedure to request leave, which was to use the Success Factors platform, as she had done for her leave from December 23 to January 3. (Pl.'s Undisputed Material Fact ¶ 27).

5

72. On January 3, 2020, Bueno told Marroqui that her IVF treatment in Barcelona would commence later that month, to coincide with the trip relating to her tenant vacating the apartment. (Bueno Decl. ¶ 10). During this conversation, Marroqui acted annoyed with Bueno over her plans to become pregnant and eventually take maternity leave. (Bueno Decl. ¶ 11).

**RESPONSE:** Disputed. Ms. Marroquí has denied that Ms. Bueno has ever told Ms. Marroquí about her intention to undergo an IVF treatment. ([Marroquí Dep. 78:2-79:6](Marroquí Dep. 78:2-79:6)). Moreover, it is simply not logical that Ms. Bueno would tell Ms. Marroquí that she was going to undergo IVF in Spain on that period when she was aware that the go ahead for travel for the IVF treatment would not start until her ultrasound showing the thickness of her endometrial lining came back, and other tests which would not come back until on or around January 15, 2020. *See* Def. Ex. 122B. .

Finally, Ms. Bueno cannot use her declaration to contradict her own deposition testimony. In the deposition, Ms. Bueno testified that she talked to Ms. Marroquí about undergoing IVF in December 2019, not January. ([Bueno Dep. 229:11-230:3; 106:16-22](Bueno Dep. 229:11-230:3; 106:16-22)).

73. On January 4, 2020, Marroqui responded by email, asking Bueno, "How many unused vacation days do you have from 2019??" (Pl. Ex. 11A, Chickedantz Decl. ¶ 3, at EU-1066). Bueno said she had 13 days of accrued unused vacation. *(Id.)* Ten days later, Marroqui emailed Plaintiff, writing that in 2019, Bueno took 29 days off, so it was unclear why Bueno thought she had 13 days of vacation remaining. (Pl. Ex. 17A, Chickedantz Decl. ¶ 5, at EU-577). In response, Bueno detailed how some of her days off in 2019 were from accrued 2018 vacation days, and concluding she had eleven remaining vacation days from 2019. (*Id.* at EU-576-77).

**RESPONSE:** Undisputed

74. Also on January 14, 2020, Marroqui forwarded Bueno's email (about having eleven days of accrued vacation) to Marta Sanjurjo, the director of human resources, (Def. Memo. at 2), asking, "Can you confirm for me that this is the case?" (Def. Ex. 114A [Doc. 139-19] at EU-1461).

**RESPONSE:** Undisputed

75. On January 16, 2020, Plaintiff began taking estrogen in preparation for her IVF procedure. (Bueno Dep., 126:21-127:2; Bueno Decl. ¶ 12). That day, as a follow-up to her December 26, 2019 leave request, Plaintiff emailed Marroquí: "I'm going to book the plane and the most economical flight has me leaving on January 27 and returning on February 6, spending every vacation day for 2019." (Pl. Ex. 14A [Doc. 139-63] at EU-1333).

**RESPONSE:** Disputed to the extent that it somehow implies that Plaintiff's leave request followed the proper procedure, which needed to be put through Success Factors. (Pl.'s Undisputed Material Fact ¶ 27.).

76. Also on January 16, 2020, Marroqui forwarded Plaintiff's email (about reserving airfare for January 27 through February 6) to Sanjurjo, stating, "I need to know how to proceed with this vacation of Marta Bueno." *(Id.)* Marroqui acknowledged at deposition that she forwarded this email to Sanjurjo for guidance on how to proceed. (Marroqui Dep., 84:6-12). Later that day, Marroqui wrote back to Bueno, stating, "I've again asked the DG and Marta [Sanjurjo]. They've told me they would tell me something today." (Pl. Ex. 15A, Chickedantz Decl. ¶ 4, at EU-1468); (Sanjurjo Dep., 110:21-25 ("DG" is a Spanish abbreviation for "general directors")).

**RESPONSE:** Undisputed.

77. On January 17, 2020, Marroqui forwarded to Sanjurjo the January 14, 2020 email from Bueno about her eleven accrued vacation days, and Sanjurjo responded, "I see it, but it's still

7

not correct," and detailed how Bueno only had four days left for 2019, stating, "Perhaps she'll understand if you put it that way . . . ." (Pl. Ex. 17A, Chickedantz Decl. ¶ 5, at EU-576).

**RESPONSE:** Undisputed.

78. On January 20, 2020, as management was still trying to determine how many days of accrued vacation were available to her, Bueno emailed Sanjurjo, copying Marroqui: "Cristina [Marroqui] tells me that I should send you an email explaining the issue of the unused vacation days. Here are the details." (Pl. Ex. 18A, Chickedantz Decl. ¶ 6, at EU-581). Plaintiff detailed why there was a discrepancy of seven days in 2019, which had to do with Defendants requiring Bueno to cancel a vacation and remain in New York to cover for another employee; and that she had 21 unused days from 2018, partly due to a medical issue that barred her from travelling. (*Id.* at EU-581-82).

**RESPONSE:** Disputed to the extent that it purports to be a correct account of Ms. Bueno's remaining vacation days or that her second leave in January was somehow authorized. (*See* Defs.'' Resp. to Proposed Undisputed Facts ¶¶ 83,89).

79. Later that day, on January 20, 2020, Marroqui forwarded the email from Bueno (explaining to Sanjurjo that she had accrued vacation days from 2018) to Teresa Jimenez—the supervisor to whom Bueno had reported in 2018 (Sanjurjo Dep., 88:3-11; 89:16-20), and Bueno's former "Area Manager" (*id*. at 101:15-19)—stating, "We have a discrepancy in the vacation days of Marta Bueno for 2018, and Marta Sanjurjo tells me I should ask you what medical situation arose in 2018 as a result of which Marta was unable to take her vacation time." (Pl. Ex. 18A, Chickedantz Decl. ¶ 6, at EU-581).

**RESPONSE:** Undisputed.

80. The next day, Jimenez responded by email to Marroqui: "Yes, she was in fact hospitalized on the day she was due to catch the plane. I am aware that she sent an email explaining the situation to Marta [Sanjurjo]. Ultimately she couldn't take it because they prohibited her from flying. I also remember that I reconfirmed with her that I had discussed it with you." (*Id.*) Marroqui forwarded Jimenez's email to Sanjurjo. (*Id.*) Shortly thereafter, Sanjurjo responded to Marroqui:

> Can you ask Terry to share with you the vacation time she actually did take in 2018? I know it to be the case that Marta reported not having been able to catch the plane because she was sick, and that she later asked to take those vacation days from October 8 to 21, but it doesn't seem normal to me for her not to have informed you in early 2019 that she did in fact have unused vacation days. If she had unused days, wouldn't it be logical for her to take them over Christmas 2018?
>
> Vacation time can't be carried over in this way.

(*Id.* at EU-580).

81. Also on January 21, 2020, in response to Marroqui's email request, Jimenez responded to Marroqui and Sanjurjo by email:

> The requests I have are for 14 days from August 13 to 26, being those that were put back to October and that were the two weeks that were owed from 2017. In addition to those 14 days that could not be taken in August, she took an additional week in October from October 1 to 7.
>
> From what I've been able to read in an email on which I was copied, she completed her vacation time for 2018 with a week that you (Cristina) authorized for her from July 1 to 7, 2019. From that point I don't recall what happened. I know she had to return to Spain and postpone her vacations because she had to return to NY so Pablo could go to Chicago.

(*Id.*)

**RESPONSE:** Undisputed.

82. On January 22, 2020, Sanjurjo wrote comments within the text of the January 20, 2020 email from Bueno (explaining why she had accrued vacation days from 2018), and forwarded it to Marroqui and Jimenez, commenting, "I see that this topic is even more complicated. Let's see if we can reconstruct this. I've inserted my comments in red." (Pl. Ex. 19A, Chickedantz Decl. ¶

9

7, at EU-583). Within the text of Bueno's email, Sanjurjo highlighted the sections where Bueno explained that she had accrued days from 2018, and said, "*This is where the problem lies.*" (Pl. Ex. 19A, Chickedantz Decl. ¶ 7, at EU-584 (emphasis in original)).

**RESPONSE:** Undisputed.

83. Bueno went to Barcelona on January 26, 2020, with the understanding that she had management's authority to take her requested leave. (Bueno Dep., 81:1-13; 93:4-6; 100:17-101:16; 103:3-8; Marroqui Dep., 87:5-6; Bueno Decl. ¶ 13).

**RESPONSE:** Disputed. Ms. Bueno did not believe she was authorized to take vacation when she went to Barcelona on January 26, 2020. When questioned by Ms. Marroquí in an email dated February 6, 2020, how come she was in Spain, Plaintiff wrote that "***I am sorry that I took days that I was not entitled to***, and I understand that this is not favorable but I had to take care of the apartment and leave it in conditions to transition to a new tenant." (Defs.' Undisputed Material Facts ¶ 36; Def. Ex. 116A (emphasis added)). In order to argue that Ms. Bueno's vacation is authorized, Plaintiff has relied on an internal email between Ms. Sanjurjo and Mr. López well after the unauthorized leave had taken place, where Ms. Sanjurjo speculates that Plaintiff may have thought that her explanation of the remaining number of vacation days was sufficient to constitute an authorization. (Sanjurjo Dep. 124:16). This explanation is belied by the record. Ms. Bueno testified that no one approved her vacation request orally or in writing and explained that she believed her second request for vacation was tacitly authorized because her calculation of how many vacation days she had left was, according to her, correct. Ms. Bueno also testified that this tacit approval was a deviation of Eurostars' policies, which requires vacations approvals to be done in writing. (Bueno Dep. 101:21-104:18; Def. Ex. 110, EUROSTARS0004750, § 3.3 "[…] *In order to anticipate work loads, you must schedule vacation leave in advance. The Hotel will make every*

10

*effort to accommodate your vacation request. However, business needs as well as the vacation schedules and length of service of other staff members will dictate when you can take your vacation, **which will be given to staff members via written notice**.*" (emphasis added)).

84. On January 27, 2020, Plaintiff began the IVF process in Barcelona. (Bueno Dep., 126:21-127:2; Bueno Decl. ¶ 14).

**RESPONSE:** Disputed to the extent that it contradicts Plaintiff's Undisputed Material Fact No. 50, insofar as the IVF process started upon Plaintiff's start on estrogens on or around January 16, 2020. (Pl.'s Undisputed Material Facts ¶ 50).

85. On February 2, 2020, Bueno sent an email to Marroqui stating, "I just wanted to remind you that I am in Barcelona because of the issue with my apartment so you won't get my commercial report as I obviously could not make any visits." (Pl. Ex. 26A [Doc. 139-71] at EU-2050).

**RESPONSE:** Undisputed.

86. On February 3, 2020, Marroqui wrote, "Do you have the ok for these days?" (Pl. Ex. 26A [Doc. 139-71] at EU-2049–50). Bueno responded, "I told you that I needed to come in advance and a few weeks ago I told you the days and you told me you would send it to GM[.] I thought that using vacation days would be the easiest way but if not tell me what would be best[.]" (*Id.* at EU-2049). In turn, Marroqui responded, "But if Marta Sanjurjo has not told you anything after all the exchanged emails and you know that vacations must always be authorized by your supervisor after the ok from GM. . . . Since when are you in Spain?" (*Id.*) Bueno responded, "ok I've been here for 1 week." (*Id.*)

**RESPONSE:** Undisputed.

11

87. In the evening of February 3, 2020, Marroqui emailed her weekly commercial report to López. Her report included the following: "*Marta Bueno: claimed not submitted.*" (Pl. Ex. 22A [Doc. 139-69] at EU-872) (emphasis in original).

**RESPONSE:** Disputed to the extent that Plaintiff omitted from her explanation that Ms. Marroquí's wrote to Mr. López, "[t]his week we did not receive the business report from Marta Bueno." (Pl. Ex. 22A, at EUROSTARS000865).

88. On February 4, 2020, as part of her IVF procedure, Bueno's embryo was transferred. (Bueno Dep., 128:7-10; Bueno Decl. ¶ 15.) Also on February 4, 2020, Marroqui forwarded the February 3 email exchange between herself and Bueno (about Bueno's presence in Spain) in separate emails to both Sanjurjo and López (Pl. Ex. 26A [Doc. 139-71] at EU-2048), and López ' executive assistant, Judith Gonzalez, forwarded the email to Sanjurjo,[1] and asked, "Did you authorize these vacation days for Marta Bueno?" *(Id.)* Sanjurjo responded, "I'll explain it to you later." (*id.*), to which Gonzalez responded, "The boss is asking!" (*Id.* at EU-2047). "The boss" refers to López . (Sanjurjo Dep., 121:14-18).

**RESPONSE:** Undisputed.

89. Later that day, February 4, 2020, Sanjurjo emailed López and addressing his assistant Gonzalez, wrote:

> The truth is it was my fault, let me explain . . .
>
> Marta asked Cristina for these days because she had to come to Barcelona for some issues related to papers for the apartment and she wanted to take advantage of the fact that, she said, she had vacation days pending.
>
> The fact is that when I told the boss he didn't understand why she didn't take her vacation during Christmas, but the fact is she did take a vacation in December ... we had to rebuild the days that she had really enjoyed

---

[1] Sanjurjo testified that Judith Gonzalez was López ' executive assistant. (Sanjurjo Dep., 120:3-12).

12

> because they didn't add up (Cristina had only 4 days pending) and it turns out that what we hadn't taken into account the fact that when she was on her approved vacation last year (from May 27 to June 9) we made her return to New York on June 2 because we sent Pablo to Chicago)
>
> The problem is I was commenting this with Cristina and I should have talked to Marta to tell her that the days were correct but it was not the best time for her to take them but I didn't ... however, Marta didn't ask again if it was ok (I suppose that as she sent me an email to explain the days that were missing she believed that was enough). I finally found out she was in Barcelona yesterday ...
>
> I'm sorry
>
> Best regards
>
> Marta

(Pl. Ex. 26A [Doc. 139-71] at EU-2047 (certified translation); *accord* Sanjurjo Dep., 123:6–124:18 (witness translation)).

**RESPONSE:** Disputed to the extent that Plaintiff intends to portray the email as an admission of guilt or that it somehow shows Ms. Bueno's unauthorized stay was approved. In her email Ms. Sanjurjo states: "*I should have talked to Marta to tell her that the days were correct but it was not the best time for her to take them but I didn't ... however, Marta didn't ask again if it was ok.*" Plaintiff was a long-term employee of Eurostars and was fully aware that her vacation could not be tacitly approved but rather needed to be requested—and approved—in writing. (*See supra* ¶ 83; Def. Ex. 110.). In fact, Ms. Sanjurjo's observation that the timing was not convenient and that Plaintiff did not follow up on her request are in accord with the process by which vacations were supposed to be granted.

90. On February 6, 2020, Bueno emailed Marroqui advising that she would have to delay her return to New York from February 6 until February 13, and would return to work on February 14. (Def. Ex. 116A [Doc. 139-23] at EU-591). Marroqui responded: "I was very surprised

13

by this email because actually you are in Spain without the definitive approval of Marta Sanjurjo, who I am copying for her records." (*Id.*)

**RESPONSE:** Undisputed.

91.     On February 10, 2020, in response to a request for work-related documents, Bueno emailed Coordinator of International Commercial Department Sofie Vandeweyer, copying Marroqui, advising that she was in Spain until Thursday for a personal matter, and that she would return to work on Friday and provide the documents at that time. (Pl. Ex. 30A [Doc. 139-73] at EU-1674). Marroqui forwarded the email to Sanjurjo, stating, "In the end, how should we proceed with Marta [Bueno]. I'm not sure if you've had the chance to discuss it with Mr. López or if you've managed to speak with her?" (*Id.*) Later that day, Marroqui emailed her weekly commercial report to López , including the following: "*Marta Bueno: unauthorized absence in Spain.*" (Pl. Ex. 31A, Chickedantz Decl. ¶ 8, at EU-882 (emphasis in original)).

**RESPONSE:** Undisputed.

92.     On February 11, 2020, Marroqui forwarded the February 10 email chain to Patricia Cereijo, Defendants' Chicago hotel manager (Bueno Dep., 71:3-5), stating, "I sent this email to Marta Sanjurjo yesterday because, to be honest, I don't know how we're going to proceed with Marta Bueno … No one has responded to me yet." (Pl. Ex. 32A [Doc. 139-75] at EU-1680–81). Cereijo responded, "I honestly don't understand anything . . . " (*Id.* at EU-1680.) Marroqui responded, "She's in Spain until Thursday, and I still don't know anything."). (*Id.*)

**RESPONSE:** Undisputed.

93.     Bueno returned to New York on February 13, 2020. (Bueno Dep., 104:21-105:2). The next day, Plaintiff learned that the IVF treatments had been successful and that she was pregnant. (Bueno Dep., 158:5-10).

**RESPONSE:** Disputed as to whether Ms. Bueno knew as of February 14, 2020, that she was pregnant. Ms. Bueno sent repeated questions to the IVF clinic to ask them whether she was pregnant or not between February 14 and February 20, 2020. (*See* Bueno Dep. 174:2-179:13; Def. Ex. 122A).

### 4. Plaintiff's pregnancy announcement and subsequent termination.

94. On February 18, 2020, Carla Isbert of the Law Department dispatched Cereijo to New York to inform Bueno that her employment was terminated. Isbert's email attached a termination letter that provided no reason for Plaintiff's termination. (Pl. Ex. 43A [Doc. 139-79] at EU-300). According to Defendants' Response No. 9 in each of their three sets of interrogatory responses, López was the only individual with authority to terminate Plaintiff's employment. (Exs. 49-51, Chickedantz Decl. ¶¶ 11-13).[2] But López did not act alone. According to Defendants' Response No. 11 in their interrogatory responses, López, Sanjurjo and Marroqui were all involved in the decision to terminate Bueno's employment. (*Id.*) While López was the ultimate decisionmaker, according to Defendants' interrogatory Response No. 9, Marroqui played a meaningful role in that she informed López by email to his assistant on February 4, 2020, that Bueno had taken an unauthorized vacation in Spain (Pl. Ex. 26A [Doc. 139-71] at EU-2048), informed López again in her February 10, 2020 report (Pl. Ex. 31A, Chickedantz Decl. ¶ 8, at EU-882), and referred Plaintiff for termination. (Sanjurjo Dep., 33:8-18; 34:15-35:5; 53:13-16).

**RESPONSE:** Disputed to the extent that Carla Isbert did not dispatch Ms. Cereijo. (*See* Defs.' Undisputed Material Facts ¶ 48; Pl. Ex. 38A). Moreover, Mr. López has testified that he only learned about it afterwards. (López Dep. 32:3-7).

---

[2] Notably, Sanjurjo signed Defendants' Interrogatory responses served on October 6, 2023, (Pl. Ex. 50, Chickedantz Decl. ¶ 12), while López signed Defendants' Interrogatory responses served on November 17, 2023 (Pl. Ex. 51, Chickedantz Decl. ¶ 13).

95. On February 20, 2020, Plaintiff advised Marroqui that the IVF had been successful and that she was pregnant. (Bueno Dep., 204:16-22; Bueno Dec. ¶ 16).

**RESPONSE:** Disputed. Ms. Marroquí testified in her deposition that she first learned about Ms. Bueno's pregnancy on February 25, 2020, after she spoke with Patricia Cereijo. (Marroquí Dep. 65:11-21). Ms. Marroquí also testified that she and Ms. Bueno never talked about Ms. Bueno's plans to undergo IVF. (*Id.* at 78:2-79:6). Plaintiff's husband also testified that Ms. Bueno first told Defendants that she was pregnant on February 25, 2020. (*See* Defs.' Undisputed Material Facts ¶ 57; Gorla Dep. 80:10-81:15). Moreover, Ms. Bueno does not dispute that her ultrasound visit was on February 20, 2020, at 5:15 pm, and that the preliminary report which would confirm her pregnancy was issued only on February 27, 2020. (*See* Defs.' Undisputed Material Facts ¶ 55; and Plaintiff's response thereto.)

96. A few days later, on February 23, 2020, in an email to López, Cereijo advised that she would go to New York the following week to terminate Bueno's employment. (Pl. Ex. 40A, Chickedantz Decl. ¶ 6, at EU-4626 and EU-4637).

**RESPONSE:** Ms. Cereijo's February 23, 2020, email to Mr. López discussed a series of issues, including an update that she was going to New York to terminate Ms. Bueno. (Pl. Ex. 40A, at EUROSTARS004637). However, Ms. Cereijo received a first draft of Ms. Bueno's termination letter on February 18, 2020, before Ms. Bueno allegedly disclosed to Ms. Marroquí that she was pregnant. (*See* Defs.' Undisputed Material ¶ 48; Def. Ex. 130, at MB00394395).

97. Without any justification from Defendants, Plaintiff was fired on February 25, 2020. (Def. Ex. 127 [Doc. 139-40] at MB-13; Bueno Decl. ¶ 17).

**RESPONSE:** Disputed. Defendants fired Ms. Bueno because she abandoned her job post and took leave without authorization. (Sanjurjo Dep. 135:19-136:25; Marroquí Dep. 65:22-66:5;

López Dep. 41:13-17). While Ms. Bueno's termination letter does not state a reason for termination it cannot be inferred from this fact that Ms. Bueno was fired without justification.

December 13, 2024

Respectfully Submitted,

Brian C. Dunning
Irene Ribeiro Gee
DUNNING RIEVMAN & MACDONALD LLP
1350 Broadway, Suite 2220
New York, New York 10018
(646) 873-7522
bdunning@drmlaw.com
iribeiro@drmlaw.com

*Attorneys for Defendants*