UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/2/2026___

MARTA BUENO,

                              Plaintiff,

              -against-                                21-CV-00535 (MMG)

EUROSTARS HOTEL COMPANY, S.L., et al.,                 **OPINION & ORDER**

                              Defendants.

MARGARET M. GARNETT, United States District Judge:

This is a pregnancy discrimination lawsuit. Plaintiff is Marta Bueno. Defendants are Eurostars Hotel Company, S.L. ("Eurostars"), Front Property Hotel Corporation ("Front Property"), and Amancio Lopez Saijas ("Lopez"). Eurostars performs hotel management services for a conglomerate of companies known as Grupo Hotusa. Dkt. No. 135 ¶ 2. Front Property operates a hotel in New York City. *Id.* ¶ 5. Lopez is the CEO of Front Hotel, sole administrator of Eurostars, and founded "a hotel and tourism business which became known as Grupo Hotusa." *Id.* ¶ 7. Plaintiff was an employee of Eurostars and worked in Manhattan. In January 2020, she left her post for three weeks and traveled to Spain without prior authorization. While in Spain, she received in vitro fertilization ("IVF") treatments. Shortly after she returned to the United States, Defendants terminated her employment. She responded with a lawsuit alleging pregnancy discrimination in violation of Title VII, the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Before the Court now is Defendants' motion for summary judgment. For the reasons set forth below, the motion is GRANTED.

1

## BACKGROUND

I.    **RELEVANT FACTS**[1]

### A. Plaintiff's Job

In 2007, Plaintiff began working at a hotel owned by Lopez in Barcelona, Spain. Dkt. No. 135 ¶ 13. She was transferred to New York in 2013 to work as a general manager at another Lopez-affiliated hotel. *Id.* ¶¶ 13–14. Then, starting in 2018, Plaintiff worked as a sales manager at Eurostars. *Id.* ¶ 8. Her position required that she make regular weekly visits to companies in New York to encourage them to book rooms at Eurostars' hotels. *Id.* ¶ 15. This was an in-person position requiring Plaintiff to be in New York to perform the client visits. *Id.* ¶ 20. As part of her job duties, Plaintiff submitted a weekly report to her then-supervisor, non-party Cristina Marroqui. Dkt. No. 135 ¶ 15; Dkt. No. 145 ¶ 66.

### B. Plaintiff's Relationship with Marroqui and Negative Performance Reviews

Plaintiff and Marroqui seemingly had a close relationship. They would exchange many messages on WhatsApp, often referring to one another as "darling," and expressed excitement at seeing one another. *See* Dkt. No. 145 ¶¶ 67–68. Plaintiff also confided in Marroqui after she had an ectopic pregnancy in 2018, prompting Marroqui to tell Plaintiff she could always talk to her. *Id.* ¶ 69.

Notwithstanding their close personal relationship, Marroqui gave Plaintiff several negative performance reviews. From November 4, 2019, to January 13, 2020, Marroqui

---

[1] The following facts are taken from the 56.1 Statement Defendants submitted (Dkt. No. 135) or the "additional facts" Rule 56.1 Statement Plaintiff submitted (Dkt. No. 145) where necessary, and where the facts are undisputed or not materially disputed with evidence from the record. The Court refers to the parties' memoranda of law in support of and in opposition to the motion for summary judgment as follows: Defendants' memorandum of law supporting their motion for summary judgment (Dkt. No. 134) as "Mot."; Plaintiff's opposition (Dkt. No. 141) as "Opp."; and Defendants' reply (Dkt. No. 150) as "Reply."

repeatedly stressed that Plaintiff needed to improve. Dkt. No. 135 ¶ 22. In a November 4, 2019 response to Plaintiff's weekly report, Marroqui asked Plaintiff to be more aggressive and chastised her for a mistake they had already "discussed . . . many times." *Id.* ¶ 23. Responding to Plaintiff's November 18, 2019 report, Marroqui asked Plaintiff to "[p]lease improve" and stated, "[y]ou should have indicated who you have contacted since this week since you have *barely done* any external actions." *Id.* ¶ 24. Marroqui provided similar comments in response to Plaintiff's weekly reports in December 2019 and January 2020, asking her to improve and "be more organized and focused." *Id.* ¶¶ 25–26.

### C. Vacation-Related Procedures at Plaintiff's Employment

As with most jobs, Plaintiff needed authorization before taking vacation. Dkt. No. 135 ¶ 18. An employee handbook that Plaintiff helped produce, for example, specified that "[v]acation leave must be requested in writing and approved by your supervisor." *Id.* ¶¶ 16, 18. Grupo Hotusa launched a web-based platform in 2019 called Success Factors for employees to request and receive authorization for vacation. *Id.* ¶ 21. Before taking vacation, an employee would submit a vacation request via Success Factors. *Id.* The employee's supervisor would then respond to the request on Success Factors. *Id.* Like other employees, Plaintiff submitted requests for vacation using this platform. *Id.* For example, on November 22, 2019, Plaintiff used Success Factors to request a vacation from December 23, 2019, until January 3, 2020. Dkt. No. 135 ¶ 27. Marroqui approved the request days later via Success Factors. *Id.*

### D. The December Vacation Request and Relevant Evidence

During her approved vacation, on December 26, 2019, Plaintiff emailed Marroqui that she needed to go to Spain "around January 21, 2020[,] until February 1, 2020[,] or soon thereafter to manage a tenant matter." Dkt. No. 145 ¶ 71. Plaintiff avers that, on January 3, 2020, she informed Marroqui in a phone call she would pursue IVF treatments while in Spain in

3

January. *Id.* ¶ 72.   During that call, Marroqui purportedly "acted annoyed with [Plaintiff] over her plans to become pregnant and eventually take maternity leave." *Id.*

Record evidence shows that Marroqui responded to Plaintiff by email on January 4, 2020, asking if Plaintiff had any vacation days left from 2019. *Id.* ¶ 73.   Plaintiff responded that she had unused days from 2019. *Id.*   Marroqui forwarded Plaintiff's email to the director of human resources, Ms. Marta Sanjurjo, for confirmation. *Id.* ¶ 74.   On January 16, 2020, Plaintiff emailed Marroqui: "I'm going to book the plane and the most economical flight has me leaving on January 27 and returning on February 6, spending every vacation day for 2019." *Id.* ¶ 75. Marroqui again forwarded the email to Sanjurjo stating, "I need to know how to proceed with this vacation of [Plaintiff]," and responded to Plaintiff that she forwarded the request and should have a response soon. *Id.* ¶ 76.   Over the next several days, Marroqui, Sanjurjo, and Plaintiff exchanged multiple emails as Marroqui and Sanjurjo tried to determine whether Plaintiff indeed had any vacation days left from 2019 that could be used in 2020. *Id.* ¶¶ 79–82.[2]   None of these exchanges, however, ended with either Marroqui or Sanjurjo authorizing Plaintiff to use any additional vacation days in January 2020.   Dkt. No. 135 ¶ 33.   Nevertheless, Plaintiff boarded a plane to Barcelona on January 26, 2020.   Dkt. No. 145 ¶ 83.

A week later, on February 2, 2020, Plaintiff emailed Marroqui: "I just wanted to remind you that I am in Barcelona because of the issue with my apartment so you won't get my commercial report as I obviously could not make any visits." *Id.* ¶ 85.   The email exchange below followed:

---

[2] The confusion seemingly stemmed from a 2018 vacation Plaintiff had scheduled but then suddenly canceled to cover for a sick co-worker. Dkt. No. 145 ¶ 78.   Because Plaintiff never used those 2018 vacation days, she took them in 2019.   Thus, there was a dispute about whether Plaintiff had any days left over from 2019 given that a portion of the 2019 vacation days she used rolled over from 2018. *Id.*

> Marroqui: "Do you have the ok for these days?"
>
> Plaintiff: "I told you I needed to come in advance . . . . I thought that using vacation days would be the easiest way."
>
> Marroqui: "But if Marta Sanjurjo has not told you anything after all the exchanged emails and you know that vacations must always be authorize[d] by your supervisor after the ok from [management] . . . . Since when are you in Spain?"
>
> Plaintiff: "ok I've been here for 1 week."

*Id.* ¶ 86.

Marroqui forwarded the exchange to Sanjurjo and Lopez's assistant, flagging that Plaintiff had left New York without authorization and seeking guidance on how to proceed. *Id.* ¶¶ 87–88. Lopez's assistant then contacted Sanjurjo, stating Lopez wanted an update regarding Plaintiff's absence. *Id.* ¶ 88. Sanjurjo sent an email to Lopez's assistant explaining, "[t]he truth is it was my fault," because, although Plaintiff in fact did have unused vacation days from 2019, "I should have talked to [Plaintiff] to tell her that the days were correct but it was not the best time for her to take them but I didn't . . . [H]owever, [Plaintiff] didn't ask again if it was ok . . . . I finally found out she was in Barcelona yesterday." *Id.* ¶ 89.

A few days later, on February 6, 2020, the day Plaintiff was scheduled to return to New York, Plaintiff emailed Marroqui, stating she was delaying her return trip and would not return to work for another week, until February 14, 2020. *Id.* ¶ 90. The email stated, "I am sorry that I took days that I am not entitled to, and I understand that this is not favorable but I had to take care of the apartment and leave it in conditions to transition to the new tenant." Dkt. No. 135 ¶ 36. Marroqui responded: "I am very surprised by this email since you are in fact in Spain without the definitive ok from Marta [Sanjurjo], with whom I copy for her information." *Id.*

### E.  Plaintiff Did Not Perform Key Job Duties While Abroad

Plaintiff did not perform many of her duties while abroad. *Id*. ¶¶ 42–43.  For example, although Plaintiff needed to submit weekly job reports, she failed to do so while abroad. *Id*. ¶ 43.  Accordingly, in commercial reports Marroqui submitted to Lopez, she indicated that Plaintiff did not make her weekly reports and, in one report, stated: "[Plaintiff]:  unauthorized absence in Spain." Dkt. No. 145 ¶ 91.  Plaintiff failed to submit other work documents as well, including a January report involving a hotel within the Hotusa Group, which she did not submit until February after repeated emails from a co-worker. Dkt. No. 135 ¶ 42.  As another example, on February 10, 2020, Plaintiff responded to a request for work-related documents from a co-worker, stating that she was in Spain and could not provide the documents and CCing Marroqui. Dkt. No. 145 ¶ 91.  Marroqui forwarded the email to Sanjurjo, stating: "In the end, how should we proceed with [Plaintiff].  I'm not sure if you've had the chance to discuss it with Mr. Lopez or if you've managed to speak with her?" *Id*.  Marroqui forwarded that email chain to another co-worker named Patricia Cereijo on February 11, 2020. *Id*. ¶ 92.  She wrote, "I sent this email to Marta Sanjurjo yesterday because, to be honest, I don't know how we're going to proceed with [Plaintiff] . . . No one has responded to me yet." *Id*.

### F.  Plaintiff's Termination

Plaintiff's employment was terminated in February 2020 shortly after she returned from Spain. *Id*. ¶ 94.  Although the parties dispute <u>who</u> decided to terminate Plaintiff's employment, it is undisputed that the termination decision had been made no later than February 18, 2020, because a lawyer for Grupo Hotusa named Carla Isbert provided Cereijo a letter of termination for Plaintiff on that date, and asked Cereijo to hand-deliver it to Plaintiff in New York. *See* Dkt. No. 139-79; Dkt. No. 135 ¶ 48.  Two days later, on February 20, 2020, Plaintiff called Marroqui and said she was pregnant. Dkt. No. 145 ¶ 95.  Five days after that, on February 25, 2020,

6

Cereijo gave Plaintiff the letter in New York, at which time Plaintiff also told Cereijo she was pregnant. Dkt. No. 135 ¶ 49.[3]

## II.    PROCEDURAL HISTORY

Plaintiff filed this lawsuit on January 21, 2021. Dkt. No. 1. Two rounds of motion practice yielded the operative Second Amended Complaint. Dkt. No. 62 ("SAC"). It alleges that Defendants illegally fired Plaintiff after learning she was pregnant in violation of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). SAC ¶ 1. Her complaint also alleges that Defendant Lopez illegally aided and abetted pregnancy discrimination in violation of New York State law. *Id.* ¶¶ 147–150.[4]

Discovery yielded a voluminous record of documents, policies, and emails. As part of discovery, Plaintiff, Marroqui, Sanjurjo, and Lopez sat for depositions. *See* Dkt. No. 136-55 ("Bueno Dep."); Dkt. No. 137-58 ("Marroqui Dep."); Dkt. No. 139-57 ("Sanjurjo Dep."); Dkt. No. 144-19 ("Lopez Dep."). As will be relevant later, there are at least two points of contention concerning these materials that merit discussion.

The first concerns whether Plaintiff discussed her IVF treatments with Marroqui. It is undisputed that Plaintiff first informed Marroqui she was pregnant on February 20, 2020, two days after Hotusa Group lawyers finalized Plaintiff's termination letter and arranged for it to be hand-delivered to her. But the parties dispute whether Plaintiff had previously told Marroqui she would receive IVF treatments while in Spain. Plaintiff submitted a declaration averring that she

---

[3] On February 26, 2020, Marroqui sent Plaintiff a message on WhatsApp. *Id.* ¶ 59. The message says that Cereijo had called Marroqui the previous day to let her know that Plaintiff was being fired. *Id.* "Personally," the message continued, "it has been a pleasure working with you and I wish you the best of luck both personally and professionally. Congratulations on your pregnancy and your marriage. I wish the best for you, truly." *Id.*

[4] The Second Amended Complaint also included retaliation claims (Counts II, IV, VII), which Judge Koetl dismissed with prejudice. *See* Dkt. No. 77.

7

told Marroqui in a phone call on January 3, 2020, that she would receive IVF treatments while in Spain in January. Dkt. No. 143 ¶ 10. Previously, at her deposition, Plaintiff cited a "tenant matter" as the reason she provided Marroqui why she was going to Spain. *See* Dkt. No. 145 ¶ 71; Bueno Dep. at 91:16–17 ("I had to handle the changing of the tenant in the apartment."); *id.* at 91:20–21 ("This was the reason for which I requested these days"). On June 12, 2024, Judge Lehrburger ordered Plaintiff to engage in reasonable effort to locate her call logs to corroborate that she called Marroqui and discussed IVF treatments. Dkt. No. 116. No records were located. Marroqui testified in her deposition that Plaintiff had never told her about pursuing IVF treatments while in Spain and that she did not recall a January 3, 2020 phone call. Marroqui Dep. at 78:1–15.

The second point concerns who had the authority to terminate Plaintiff and, relatedly, who decided to terminate her. In an interrogatory response dated August 16, 2022, Defendants identified Marta Sanjurjo, Carla Isbert, Amancio Lopez, and Cristina Marroqui as "people . . . involved, in differing degrees, in making the decision to terminate the plaintiff." Dkt. No. 144-15 at 5–6. In a November 17, 2023 objection to interrogatories, Defendants wrote that "[o]nly Amancio Lopez Seijas had the authority to terminate Plaintiff's employment." Dkt. No. 144-18 at 4. Nevertheless, in her deposition, Sanjurjo testified that she made the decision to terminate Plaintiff's employment and Lopez was merely "informed of the firing" after the decision "had already been taken." *See* Sanjurjo Dep. at 35:9–25; *id.* at 36:13–16. She also identified Marroqui as "involved in the decision making to fire [Plaintiff]" solely because Marroqui "informed the [sic] absence of [Plaintiff] in her job position." *Id.* at 33:8–18. During Lopez's deposition, he testified he did not make the decision to fire Plaintiff. Lopez Dep. at 27:16–25 ("I did not fire [Plaintiff]. Once again, I preside over a company of over 7,000 employees . . . .

[S]he held a position of a certain level in the company as a commercial attaché and I don't handle these types of details within the company."). He also testified that he assumed that Sanjurjo, "as head of the HR Department, she, at the very least, authorized the firing. Without her authorization, it wouldn't be possible to fire her." *Id.* at 26:10–15. Lastly, Marroqui testified that she did not have authority to fire employees, Marroqui Dep. at 16:13–16, or a role in recommending or deciding to terminate Plaintiff's employment, *id.* at 17:13–18.

Defendants moved for summary judgment after the close of fact discovery. Mot. at 1. Defendants argued that Plaintiff could not establish a *prima facie* case of pregnancy discrimination because Plaintiff did not tell anyone at the company that she was pregnant until February 20, 2020, two days *after* Defendants had decided to terminate her and finalized her formal termination letter. Even if Plaintiff could establish a *prima facie* case, Defendants argue, summary judgment is warranted because ample record evidence supports that Defendants fired Plaintiff for taking a three-week unauthorized leave. Defendants also argued that no record evidence indicates that Defendants fired Plaintiff for a discriminatory reason. Plaintiff's opposition highlighted that, as alleged, Plaintiff told Marroqui in early January she would receive IVF treatments while in Spain. Bueno Dep. at 229:13–19; Dkt. No. 145 ¶ 72. And Plaintiff argues there is a dispute of material fact concerning whether Defendants illegally fired Plaintiff for pursuing IVF treatments. Opp. at 11.[5]

---

[5] In their reply, Defendants argue that Plaintiff's Second Amended Complaint never alleged discrimination based on pursuing IVF treatments and Plaintiff should be precluded from relying on a new legal theory in an opposition to summary judgment. Reply. at 2. The Court need not consider this argument given the lack of evidence from which a jury could render a verdict in Plaintiff's favor even on Plaintiff's allegedly new theory of discrimination.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6] "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be believed," and a court must draw "all justifiable inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson*, 477 U.S. at 256. Reliance upon "conclusory statements" or "mere allegations" is not sufficient to

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

"Employment discrimination cases raise special issues on summary judgment." *Kenney v. N.Y.C. Dep't of Educ.*, No. 06-CV-05770, 2007 WL 3084876 (HB), at *3 (S.D.N.Y. Oct. 22, 2007). And courts must be wary about granting summary judgment in a dispute that turns principally on an employer's intent and motivation. *Id.* Nevertheless, the Second Circuit has gone "out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## DISCUSSION

The Court first considers Plaintiff's Title VII claim, then her NYSHRL and NYCHRL claims, and finally her aiding and abetting claim. Because there is no genuine issue as to any material fact and Defendants have shown they are entitled to judgment as a matter of law, the Court will enter summary judgment in favor of Defendants.

## I.    PLAINTIFF'S TITLE VII CLAIM FAILS

Title VII makes it unlawful to discharge any individual on account of sex, including due to pregnancy. 42 U.S.C. § 2000e-2(a)(1). A court assesses Title VII claims under the burden-shifting *McDonnell Douglas* framework in the absence of "direct evidence of discrimination." *Weaver v. Bloomberg L.P.*, 717 F. Supp. 3d 372, 383 (S.D.N.Y. 2024); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Gueye v. People's United Bank, Nat'l Ass'n*, No. 21-1250, 2022 WL 2203953, at *1 (2d Cir. June 21, 2022).

Under the *McDonnell Douglas* framework, a plaintiff has the burden of establishing a *prima facie* case of discrimination by demonstrating:

11

(1) she belonged to a protected class; (2) was qualified; (3) suffered an adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discriminatory intent.

*Gueye*, 2022 WL 2203953, at *1. If a plaintiff does so, "a presumption of discrimination arises" and the burden shifts to a defendant, "who must proffer some legitimate nondiscriminatory reason for the adverse action." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). If a defendant meets that burden, the presumption of discrimination disappears, and the defendant is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* This showing requires that the plaintiff "demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant is actually pretext for discrimination." *Id.*

### A. Defendants Have Met Their Burden of Showing a Legitimate Reason for Plaintiff's Termination

Even assuming Plaintiff has established a *prima facie* discrimination case, Defendants have offered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment: She abandoned her post for three weeks without authorization. *See Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 431 (S.D.N.Y. 2000) (affirming that an employee's failure to show up to work is a legitimate reason for termination); *Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, No. 15-CV-00505 (DLC), 2017 WL 1184278, at *11 (S.D.N.Y. Mar. 29, 2017); *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-05377 (MKB) (SJB), 2019 WL 1435882, at *16 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, No. 16-CV-05377 (MKB) (SJB), 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

Under the policies and practices of her employer, Plaintiff needed authorization before using vacation days to be absent from work. Documentary and testimonial evidence indicated that employees submitted vacation requests and received authorization through the Success

Factors platform. Dkt. No. 135 ¶ 21. Although Plaintiff had previously used the system to make vacation requests, she did not do so regarding her unauthorized leave from January 26, 2020, to February 13, 2020. *Id.* ¶¶ 28, 36. Furthermore, a handbook that Plaintiff herself helped draft provided in no uncertain terms: "Vacation leave must be requested in writing and approved by your supervisor." Dkt. No. 135 ¶¶ 16, 18. An email from Marroqui to Plaintiff affirmed "you know that vacations must always be authorize[d] by your supervisor after the ok from [management] . . . ," which Plaintiff never disputed. Dkt. No. 145 ¶ 86.

The evidence unambiguously reflects that Plaintiff never received authorization before being absent from work for three weeks. The record is replete with emails between Plaintiff, Marroqui, and Sanjurjo concerning Plaintiff's leave request. *See, e.g., id.* ¶¶ 74–82; Dkt. No. 139-19 at EU-1461; Dkt. No. 139-63 at EU-1333; Dkt. No. 144-8. In none of those communications did either Marroqui or Sanjurjo authorize Plaintiff to take leave. Tellingly, on January 16, 2020, when Plaintiff told Marroqui she was going to book a ticket for January 26, Marroqui responded that she forwarded the request to Sanjurjo and would have a response soon. Dkt. No. 145 ¶¶ 75–76. When Plaintiff emailed Marroqui in February that she was in Spain, Marroqui reacted with surprise and asked whether anyone authorized the vacation. *Id.* ¶¶ 85–86. In a later email to Marroqui, Plaintiff apologized for taking days to which she was not "entitled." Dkt. No. 135 ¶ 36. And on February 6, 2020, Plaintiff unilaterally extended her leave by an additional week, without even asking for that time off, much less receiving authorization. Dkt. No. 145 ¶ 90.[7]

---

[7] Plaintiff at one point in her deposition claimed she had "tacit" approval for her leave. Bueno Dep. at 104:2–10. There is no evidence whatsoever for that belief, and ample record evidence contemporaneous with these events contradicts it. *See, e.g.*, Dkt. No. 135 ¶ 36 (Plaintiff apologizing for taking vacation she was "not entitled to"). It also ignores that Plaintiff never sought approval for taking a full additional week off from February 6, 2020, to February 13, 2020, after already being absent without approval for two full weeks.

Because an employer may terminate employment for unauthorized leave, and Plaintiff took a three-week unauthorized leave, Defendants have shown a legitimate, non-discriminatory reason for Plaintiff's termination.

### B. Plaintiff Has Failed to Point to Evidence Indicating Pretext or Intentional Discrimination

Because Defendants have shown a legitimate non-discriminatory reason for terminating Plaintiff's employment, the burden shifts to Plaintiff to identify evidence indicating a reasonable probability of illegal discrimination. Plaintiff has failed to do so.

### 1. No Evidence Indicates Defendants Terminated Plaintiff for a Discriminatory Reason

Plaintiff cites no evidence in the record supporting a likelihood of illegal discrimination. Relying only on her declaration, Plaintiff argues that Marroqui knew Plaintiff was in Spain in January to receive IVF treatments. Opp at 1. No circumstantial evidence supports Plaintiff's assertion. Tellingly, although Plaintiff and Marroqui exchanged multiple WhatsApp messages and emails throughout Plaintiff's employment, which often involved personal matters, not a single written communication even circumstantially supports that Plaintiff told Marroqui she would pursue IVF treatments while in Spain. Plaintiff has not produced any evidence corroborating even the occurrence of the January 3, 2020 call, much less its content. And Plaintiff herself testified she told Marroqui she was going to Spain to deal with a tenant issue, which is also consistent with their written communications about Plaintiff's absence from work.

Meanwhile, Marroqui consistently denied in her deposition any knowledge Plaintiff was pursuing IVF treatments while in Spain. Indeed, the documentary evidence indicates that Marroqui did not even know Plaintiff had left New York. Plaintiff emailed Marroqui on February 2 to "remind" her she was in Spain "because of the issue with [her] apartment." Dkt. No. 145 ¶ 85. Marroqui expressed surprise that Plaintiff was in Spain, given neither she nor

14

Sanjurjo had authorized the vacation and "vacations must always be authorize[d] by [a] supervisor after the ok from [management]." *Id.* ¶ 86. She also asked Plaintiff: "Since when are you in Spain?" And Plaintiff's response seems to corroborate that Marroqui did not know she was in Spain in January: "[O]k I've been here for 1 week." *Id.*

Even assuming the possibility that a jury could credit Plaintiff's uncorroborated testimony that she told Marroqui she would pursue IVF in Spain in January, rejecting all of the objective evidence to the contrary, no evidence suggests that Marroqui participated in the decision to terminate Plaintiff's employment or shared anything about Plaintiff's family-planning decisions with anyone who did participate in the decision-making process. *See Willford v. United Airlines, Inc.*, 2023 WL 309787, at *2 (2d Cir. Jan. 19, 2023) (ruling that bias or knowledge of one employee does not automatically taint a decision by a different employee "if the plaintiff cannot establish a causal connection between the alleged discriminatory bias and the decision to terminate her"); *Stainkamp v. Changes Int'l Of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163, 167–68 (E.D.N.Y. 2005) (granting summary judgment to Defendants where, even though one employee knew about pregnancy, evidence showed the person who fired the plaintiff was unaware of her pregnancy). Marroqui testified she did not have authority to terminate Plaintiff and did not participate in the decision-making process to terminate Plaintiff's employment. Marroqui Dep. at 17:13–18. During Sanjurjo's deposition, Plaintiff's counsel asked about Marroqui's role in the decision making to fire Plaintiff. Sanjurjo Dep. at 33:8–16. Consistent with Marroqui's testimony, Sanjurjo responded: "She simply informed [sic] the absence of [Plaintiff] in her job position." Sanjurjo Dep. at 33:16–18. There is no contrary evidence. In other words, even if a jury were to credit Plaintiff's claim that she told Marroqui about her IVF treatments, a reasonable jury would have no basis to conclude that Marroqui

played any part in the decision to fire Plaintiff or that Marroqui told any of the actual decision-makers about Plaintiff's IVF treatment. As a result, Plaintiff cannot show that discrimination played any role in her termination.

Furthermore, the objective and/or undisputed evidence corroborates that Defendants fired Plaintiff for abandoning her post. Plaintiff did not submit a request for leave via Success Factors. Dkt. No. 135 ¶ 28–30. Email records show that neither Marroqui nor Sanjurjo approved Plaintiff's leave request. *Id.* ¶¶ 31, 33. After learning that Plaintiff had left without authorization, Marroqui emailed Plaintiff expressing her surprise that she was in Spain without approval despite knowing her use of vacation days needed to be authorized. Marroqui then elevated the issue to Sanjurjo, who sent an email explaining to Lopez's assistant it was Sanjurjo's "fault" because she should have better explained the situation to Plaintiff but nevertheless Plaintiff "didn't ask again if it was ok" before boarding a plane to Barcelona. Dkt. No. 145 ¶ 89. Marroqui then flagged to Lopez and Sanjurjo Plaintiff's subsequent failures to file outstanding required reports while in Spain, *id.* ¶ 91, and sought guidance on numerous occasions on "how to proceed with [Plaintiff]," Dkt. No. 135 ¶ 46. Furthermore, the decision-making process to terminate Plaintiff's employment shared a close temporal and causal relationship with management learning that Plaintiff had gone to Barcelona without authorization and then extended her absence for another full week without authorization. *Id.* ¶¶ 44–47. Nothing in this chronology or the vast body of supporting evidence even hints at a discriminatory motive behind Plaintiff's termination. Instead, it buttresses Defendants' contention that Plaintiff was fired due to an unauthorized absence of three weeks.

### 2.     Plaintiff's Counterarguments Fail

Plaintiff's opposition does not point to any evidence indicating that Defendants harbored a discriminatory intent or that discriminatory intent played any role in her termination. Instead, it raises a variety of piecemeal arguments that largely misrepresent the record.

First, Plaintiff cites precedent that shifting post-hoc rationales for an adverse employment action can indicate discriminatory intent. Opp. at 20. Seeking to apply that case law, Plaintiff highlights portions of Defendants' brief that flag Plaintiff's poor job performance reviews and argues that—by flagging Plaintiff's poor job performance reviews—Defendants are offering a post-hoc rationale for the firing unrelated to Plaintiff's unauthorized absence. A jury could rely on this shifting rationale, Plaintiff argues, to render a verdict in her favor. Not so. Defendants have maintained throughout this litigation that Plaintiff was fired due to her unauthorized leave. *See e.g.* Mot. at 8–9; Reply. at Part I.C. And Defendants' witnesses consistently cited Plaintiff's unauthorized leave as the reason for her termination. *See* Sanjurjo Dep. at 135:19–136:25; Marroqui Dep. at 65:22–66:5; Lopez Dep. at 41:13–17. Admittedly, Defendant's brief does at times suggest that Plaintiff's poor job performance would be an additional reason justifying her termination. But the brief is also clear that Plaintiff "was fired for abandoning her job and going to Barcelona on leave without authorization." Mot. at 14. That the brief highlights Plaintiff's negative performance reviews is better understood as good advocacy by counsel, not a post-hoc rationale by Defendants seeking to justify Plaintiff's termination.

Plaintiff next argues that Defendant's unauthorized-leave justification is pretextual because the "record demonstrates genuine confusion among [Plaintiff's] supervisors as to how much paid time off was available to Plaintiff." Opp. at 21. The description of the record is correct as a factual matter. During January 2020, Marroqui and Sanjurjo exchanged many emails amongst themselves, with Plaintiff, and with other employees to try and determine whether

17

Plaintiff had left over vacation days from 2019. Dkt. No. 145 ¶¶ 76–82. But the argument is irrelevant as a legal matter. Defendants have maintained Plaintiff was terminated for being absent from work *without authorization*. Although there may have been confusion about the number of vacation days Plaintiff had, there is no ambiguity that no one authorized Plaintiff to go to Spain nor to absent herself from work and from her duties for three weeks. Dkt. No. 135 ¶ 33. Furthermore, the confusion about whether Plaintiff had remaining vacation days runs counter to her overall claim. The ongoing discussions indicate that Defendants clearly did not authorize Plaintiff's leave because they were unsure whether Plaintiff had any vacation days left and were trying to resolve that question before turning to the separate question of whether a request to use available days (if any) would be approved. Furthermore, although there was ample communication on the subject matter of Plaintiff's vacation request, none could be construed as authorizing Plaintiff's request. Indeed, after Plaintiff emailed Marroqui in February that she was in Barcelona, Marroqui expressed surprise and wrote, "But if Marta Sanjurjo has not told you anything after all the exchanged emails and you know that vacations must always be authorize[d] by your supervisor after the ok from [management] . . . . Since when are you in Spain?" Dkt. No 145 ¶ 86.

Plaintiff also highlights that, in their depositions, Defendants' witnesses "were unable to identify any written policy that [Plaintiff] violated as the basis for her termination." Opp. at 22. And Plaintiff cites precedent casting doubt on employment actions taken under unwritten policies. "The jury may look askance at Defendant's [sic] subjective, unwritten" policy of firing employees for unauthorized leave, Plaintiff argues. Opp. at 22. This argument, too, fails. It is not a controversial premise that an employee needs authorization before taking vacation. *See, e.g., Flores*, 118 F. Supp. at 431; *Ejiogu*, 2017 WL 1184278, at *11. And it makes sense that

18

Defendants might not have a written policy codifying something so obvious. But in fact, Defendants <u>did</u> have a written policy regarding approval for vacation—an employee handbook (which Plaintiff herself helped write) was clear that "[v]acation leave must be requested in writing and approved by your supervisor." Dkt. No. 135 ¶¶ 16, 18. Moreover, multiple deponents testified that an employee needed authorization before taking vacation and that vacation requests needed to be submitted via the Success Factors platform. *See, e.g.*, Bueno Dep. at 81:20–83:18; Sanjurjo Dep. at 105:2–7; Marroqui Dep. at 97:7–14. Plaintiff acted consistently with that understanding and had not previously taken vacation without submitting written requests and receiving approval. Dkt. No. 135 ¶¶ 21, 27. For example, she submitted her December 2019 vacation request in November 2019 via the Success Factors platform. Furthermore, Marroqui in one email commented that Plaintiff knew that she needed authorization from both her and management before taking vacation. Dkt. No. 145 ¶ 86. Nowhere in the email chain did Plaintiff disagree or express surprise or confusion regarding Marroqui's statement.

Plaintiff elsewhere argues there were "shifting explanations" about who needed to authorize Plaintiff's leave and cites various provisions of the record for support. Opp. at 23. Nevertheless, the evidence Plaintiff cites is overwhelmingly consistent that Plaintiff needed to submit a leave request through Success Factors and Marroqui needed to approve it. *Id.* The only contrary evidence Plaintiff cites are two responses and objections to interrogatories dated June 21, 2023, and October 6, 2023. *Id.* (citing Dkt. Nos. 144-16 and 144-17). In those documents, Defendants asserted that "[o]nly Amancio Lopez Seijas was authorized to approve or reject employees' requests for leave." Dkt. No. 144-16 at 5. Plaintiff's reliance on these documents is misplaced, however, because neither is admissible, and a district may only rely on admissible

19

evidence in considering a motion for summary judgment. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). The June 21, 2023 interrogatory response is signed by Defendants' attorney, only, therefore was not made by someone with personal knowledge, in violation of Federal Rule of Civil Procedure 56(e)(1). Furthermore, neither document was sworn to under oath, in violation of Federal Rule of Civil Procedure 33(b)(3). Therefore, neither document would be admissible at a trial. *Miroglio S.P.A. v. Conway Stores, Inc.*, No. 05-CV-00121 (BSJ), 2008 WL 4600984, at *6 (S.D.N.Y. Oct. 15, 2008) (ruling that an interrogatory response was inadmissible because it lacked an oath).

Even if these documents were admissible, they would not create a dispute of material fact necessary to preclude entry of a summary judgment. A fact is material only if it could "affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). Even assuming it is unclear *who* needed to authorize Plaintiff's leave request, it is clear *nobody* authorized Plaintiff's leave. This is especially true given Plaintiff unilaterally extended her Barcelona trip by a week on February 6, 2020, the same day she had said she would return to New York. Dkt. No. 145 ¶ 90.

Finally, Plaintiff argues there is contradictory evidence concerning who terminated Plaintiff. As a reminder, Sanjurjo testified that she authorized the termination. Sanjurjo Dep. at 35:9–14. She also testified that Marroqui was "involved in the decision making" only because she raised Plaintiff's absence to management and asked what she should do about it. *Id.* at 33:8–18. Marroqui testified that she forwarded Plaintiff's emails to Sanjurjo but did not have a role in recommending Plaintiff's termination or the ultimate decision to terminate Plaintiff. Marroqui Dep. at 17:13–18, 84:6–9. And Lopez testified that Sanjurjo, "as head of the HR Department,

she, at the very least, authorized the firing. Without her authorization, it wouldn't be possible to fire her." Lopez Dep. at 26:10–15.

Plaintiff argues the foregoing testimony conflicts with an August 16, 2022 discovery response Defendants' counsel prepared. Opp. at 24. Plaintiff contends the discovery response stated that "four people jointly decided to terminate" Plaintiff: Lopez, Marroqui, Sanjurjo, and Isbert (the lawyer who provided the termination letter). *Id.* But Plaintiff misstates the record. The August 16, 2022 discovery response (Dkt. No. 144-15) simply identified those four individuals as people who "were *involved, in differing degrees*, in making the decision to terminate Plaintiff." Dkt. No. 144-15 at 5 (emphasis added). That is consistent with Sanjurjo's recognition that Marroqui was "involved" to the extent that she flagged Plaintiff's conduct to management, as her direct supervisor.[8]

Plaintiff also argues that Marroqui and Sanjurjo gave contradictory testimony because Marroqui testified she was not involved in the decision to fire Plaintiff while Sanjurjo, in Plaintiff's words, "admitted that Marroqui referred Plaintiff for termination." Opp. at 24. But, again, Plaintiff misstates the record. Sanjurjo never testified that Marroqui "referred Plaintiff for termination." When asked about Marroqui's role in the decision to fire Plaintiff, Sanjurjo responded: "She simply informed [sic] the absence of Marta Bueno in her job position." Sanjurjo Dep. at 33:16–18. Therefore, the purported contradiction that Plaintiff relies on does not exist.

Because Plaintiff has identified no evidence indicating a discriminatory intent, the Court will grant summary judgment in favor of Defendants on Plaintiff's claims under Title VII.

---

[8] In any event, the August 16, 2022 discovery objection is likely inadmissible by operation by Federal Rules of Civil Procedure 56(e) and 33(b).

## II.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS

The Court must assess Plaintiff's NYSHRL and NYCHRL claims independently from her Title VII claim. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013); *see Toomey v. One Equity Partners*, No. 24-CV-04088 (MMG), 2026 WL 458244, at *7 (S.D.N.Y. Feb. 18, 2026) (describing how the New York State legislature's 2019 amendment to the NYSHRL made "its standards more similar to the NYCHRL's"). Summary judgment on Bueno's NYCHRL claim is proper only "if the record establishes as a matter of law that 'discrimination played *no* role'" in a decision to terminate an employee. *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 n.27 (1st Dep't 2009)). That standard is satisfied here.[9]

The only person employed by Defendants who Plaintiff even alleges knew Plaintiff was receiving IVF treatments in Spain was Marroqui. The uncontroverted record evidence shows that Marroqui had no role in recommending Plaintiff for termination or making the decision to terminate Plaintiff's employment. Nor is there any evidence at all that Marroqui told anyone else that Plaintiff was pursuing IVF treatments in Spain. Furthermore, the evidence establishes that Plaintiff was absent from work and failed to perform her duties for three weeks without authorization, which provides a more than adequate reason justifying her dismissal. Therefore, as a matter of law, the undisputed evidence shows that discrimination played no role in Defendants' decision to terminate Plaintiff's employment.

---

[9] It is unclear whether, after 2019, the NYSHRL's standard is identical to the NYCHRL's. *Toomey*, 2026 WL 458244, at *7. Nevertheless, even assuming the two have identical standards, Bueno's claim under the NYSHRL fails given summary judgment is proper on her NYCHRL claim.

22

### III.    PLAINTIFF'S AIDING AND ABETTING CLAIM

Finally, the Court turns to Plaintiff's claim that Lopez aided and abetted illegal pregnancy discrimination.  Plaintiff alleges that Lopez violated the NYSHRL "when he terminated Plaintiff from her employment on account of her pregnancy, which aided and abetted such unlawful conduct" of the other Defendnats.  SAC ¶ 148.  This claim fails given that Plaintiff cannot show that anyone engaged in pregnancy discrimination under the NYCHRL or the NYSHRL, and thus there was nothing to aid or abet.  *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 122 (S.D.N.Y. 2022) (granting summary judgment on aiding and abetting claim because a plaintiff could not show an underlying violation of the NYSHRL).  Therefore, summary judgment is granted in favor of Defendants on Plaintiff's aiding and abetting claim, as well.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 131) is GRANTED.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and CLOSE this case.


Dated: March 2, 2026
         New York, New York


                                        SO ORDERED.

                                        _____
                                        MARGARET M. GARNETT
                                        United States District Judge